NOS. 21-50259 & 21-50261

—————————————————————————

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

————

## UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

## JUAN CARLOS CABRERA,

Defendant-Appellant

————

Appeal from the
United States District Court
for the Southern District of California
Honorable Larry Alan Burns, District Judge Presiding

————

## APPELLANT'S EXCERPTS OF RECORD
## VOLUME 3

————

KARA L. HARTZLER
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, CA 92101
(619) 234-8467
Attorneys for Defendant-Appellant

# ER-363

```
 1                    UNITED STATES DISTRICT COURT

 2              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3

 4   UNITED STATES OF AMERICA,          )
                                        )
 5        Plaintiff,                    ) No. 20-CR-435-LAB
                                        )
 6             v.                       )
                                        ) June 9, 2021
 7   JUAN CARLOS CABRERA,               )
                                        ) 9:00 a.m.
 8        Defendant.                    )
     _____    ) San Diego, California
 9

10                  TRANSCRIPT OF JURY TRIAL - DAY 2
                  BEFORE THE HONORABLE LARRY ALAN BURNS
11                   UNITED STATES DISTRICT JUDGE

12   APPEARANCES:

13   For the Plaintiff:      UNITED STATES ATTORNEYS OFFICE
                             By:  COLIN MCDONALD, ESQ.
14                                AMANDA MUSKAT, ESQ.
                             880 Front Street
15                           San Diego, California  92101

16   For the Defendant:      FEDERAL DEFENDERS OF SAN DIEGO, INC.
                             By:  BENJAMIN P. DAVIS, ESQ.
17                                SALIL DUDANI, ESQ.
                             225 Broadway
18                           San Diego, California  92101

19

20   Court Reporter:         CYNTHIA R. OTT, RDR, CRR
                             District Court Clerk's Office
21                           West Broadway, Suite 420
                             San Diego, California, 92101
22                           cynthia_ott@casd.uscourts.gov

23

24
     Reported by Stenotype, Transcribed by Computer
25
```

ER-364

1                          I N D E X

2    EXAMINATIONS                                      PAGE

3    CLOSING ARGUMENT BY COUNSEL FOR THE GOVERNMENT
     MR. MCDONALD........................................  21
4    CLOSING ARGUMENT BY COUNSEL FOR DEFENDANT
     MR. DUDANI..........................................  35
5    REBUTTAL CLOSING ARGUMENT BY COUNSEL FOR THE
     GOVERNMENT - MR. MCDONALD...........................  47

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1     the side of the cake box, remember that?  That's what this is.

2     This is going to tell you what the elements are that must be

3     proved as to each of the counts.

4              In count one, the defendant is charged with being an

5     alien who attempted to enter the United States at a time or

6     place other than designated by immigration officers.  To be

7     found guilty of that charge, the government has to prove the

8     following things beyond a reasonable doubt:

9              First, they have to prove that on the date of the

10    alleged entry, November 4th, 2019, that the defendant was an

11    alien.  An alien is a person who's not a natural born or

12    naturalized citizen of the United States.  That's the legal

13    definition of alien, a person who is not naturally born or

14    naturalized citizen of the United States, so that's the first

15    element.  They have to prove on the date that this happened,

16    the defendant was an alien.

17             Second, they must prove that the defendant had the

18    specific intent to enter the United States free from official

19    restraint.  A person has the intent to enter the United States

20    free from official restraint only if he has the intent to enter

21    the U.S. without being detected or apprehended or prevented

22    from going at large within the United States and mixing with

23    our population.

24             The government need not prove that entry free from

25    official restraint was the defendant's sole intent.  However,

1   the government must prove that at the point the defendant first

2   entered the United States, he had the specific intent to enter

3   free from official restraint, not that that was his only

4   purpose but that that was part of his purpose, that he had the

5   specific intent to enter and go at large among the population,

6   so that's the second element.

7          Third, the government has to prove that the defendant

8   attempted to enter the United States at a time or place other

9   than a place designated by immigration officers, in other

10  words, someplace other than at a port of entry where you're

11  subject to inspection.

12         Fourth, that the defendant did something.  He took

13  some action that was a substantial step toward committing the

14  crime of illegally entering the United States.  Remember, this

15  is charged as an attempt.  They're charging the defendant with

16  attempting to come into the United States.

17         So the fourth element, you must find that the

18  defendant did something that was a substantial step toward

19  committing the completed crime of actually entering the United

20  States and that strongly corroborated the defendant's intent to

21  commit the crime.

22         Let me say a word about substantial step.  Preparing

23  to commit a crime, getting ready to commit a crime, is not a

24  substantial step so mere preparation doesn't cut it as a

25  substantial step to committing a crime.

1          To be a substantial step, a defendant's act or actions

2    must unequivocally show, must unequivocally demonstrate, that

3    the crime will be committed, the crime will take place, unless

4    it's somehow interrupted by independent circumstances, so

5    that's what's meant by this term substantial step.

6          Jurors don't need to agree unanimously on which

7    particular act or actions of the defendant amounted to the

8    substantial step provided all of you agree that the defendant

9    took some action that was a substantial step toward committing

10   the completed crime of actually entering the United States.

11         And then finally, the fifth element here is that the

12   defendant committed the offense after being convicted of a

13   prior offense of illegally entering the United States.  In

14   other words, that sometime prior to November 4th of 2019 when

15   the defendant's alleged to have committed this offense, he had

16   previously been convicted of illegally entering the United

17   States.

18         So those are the five elements.  They're spelled out

19   in this instruction as to count one.

20         Let me turn to count two.  There's some similarities,

21   there's some differences.  In count two, the defendant is

22   charged with being an alien who, after being excluded or

23   deported or removed from the United States, attempted to come

24   back in, attempted reentry.

25         To be found guilty of this charge in count two, the

1  government has to prove the following things to you beyond a

2  reasonable doubt:

3         First, they have to prove that sometime before the

4  date of the alleged entry, which was November 4th, 2019, the

5  defendant had been excluded, deported or removed from the

6  United States.  That's the first element.

7         The second element is the same as it was for the first

8  crime that's alleged, that is that the defendant -- it must be

9  shown beyond a reasonable doubt the defendant had the specific

10  intent at the time he entered the United States to be free from

11  official restraint.

12         And, again, the same definition applies.  That means

13  that you're coming in with the intention to go at large among

14  the population, not to be apprehended, not to turn yourself in,

15  but to go at large without being detected by authorities.

16         And, again, the same qualifications apply to this

17  definition.  The government doesn't have to prove that the

18  defendant's sole intent was to go at large, but they must prove

19  that at the point that he first entered into the United States,

20  he specifically intended to enter free from official restraint

21  or at least that that was part of his intention and motivation

22  and that he specifically planned that, not that it was his only

23  purpose, but at least it was part of his purpose.

24         The third element is that the defendant was an alien

25  at the time that he attempted reentry.  Again, I remind you an

1  alien is a person who's not a natural born and naturalized

2  citizen of the United States.

3      Fourth element here is that when the defendant

4  attempted to enter the United States on November 4th, he didn't

5  have any permission.  He didn't have official permission from

6  official in the United States Government who's authorized to

7  give permission.  That would include the Secretary of the

8  Department of Homeland Security.  And you heard it actually is

9  permission to apply for permission, but essentially that it was

10 an unauthorized entry not sanctioned by any official who has

11 authority to allow someone to come into the United States or to

12 apply for entry to the United States.

13      And then, fifth, the government has to show that,

14 again, the -- this is an attempt crime, that he attempted to

15 reenter, that he did -- took some action that was a substantial

16 step towards committing the completed crime of actually

17 entering.

18      And the same definition of substantial step applies.

19 It's some action that shows that had there not been some

20 intervening fact, had the border patrol not shown up or

21 something else happened, that he likely would have made entry

22 and committed the completed crime of illegally entering the

23 United States.

24      So, and, again, the same qualifications apply to the

25 substantial step.  Preparation to do something is not enough.

1    The actions have to show that the completed crime, which is

2    entering the United States, will take place unless interrupted

3    by independent circumstances.

4         So those are the two definitions.  As you can tell

5    they -- some of the elements are the same.  They conflate a

6    little bit, but there are differences.  The main difference is

7    the first one requires a showing that the defendant had been

8    convicted of a prior illegal entry before and the second one

9    requires proof that he'd been removed.

10        There's some other differences so look those over and

11   compare the elements.  And as I mentioned, your task here is to

12   find what the facts are and then use your analytical ability.

13   You look at the elements and say has this been proved, do the

14   facts establish each and every one of these elements.

15        Two crimes have been charged in this case and they're

16   separate crimes.  Even though the elements overlap, a separate

17   crime is charged in both count one and count two and you have

18   to decide the counts separately.  Your verdict on one count

19   doesn't necessarily control what your verdict on the other

20   count would be.  So you look at the counts separately.  You

21   reach an independent and unanimous decision as to each count.

22        Okay.  Those are the instructions except for the last

23   five that have to do with deliberations.  At this time, I'd ask

24   you to give your respectful attention to the lawyers.  They'll

25   sum up the evidence.

1          The government goes first and then they have a chance

2     to reply so they get two arguments here and then the defense

3     goes second.

4          So you'll hear first from the United States, then

5     you'll hear from the defense.  As I mentioned to you yesterday

6     when I showed you my -- one of my favorite devices up here, the

7     lawyers estimated that they would take no longer than 20

8     minutes altogether and they've asked me to remind them if we

9     get close to the 19th minute, so I'll keep track.

10          Who speaks for the government?

11          MR. MCDONALD:  I will, Your Honor.

12          THE COURT:  Mr. McDonald, you may make your closing

13     argument.

14          CLOSING ARGUMENT BY COUNSEL FOR THE GOVERNMENT

15          MR. MCDONALD:  Good morning to you all.  The

16     defendant, Juan Carlos Cabrera, that his purpose for climbing

17     that fence coming into the United States was to find work.  He

18     is guilty of the crimes that have been charged.

19          Ladies and gentlemen, this is a simple case.  It

20     remains a simple case.  The defendant was removed from the

21     United States, most recently in April of 2018, but also several

22     times before that as you saw.

23          He had no permission to reenter the United States.

24     But he came back on November 4th of 2019 in Yogurt Canyon.  He

25     couldn't come back to a port of entry because he didn't have

1   documents to go to a port of entry.  He would have been turned
2   away.
3          So instead, he snuck into the United States.  He
4   climbed over that fence with the barbed wire on top near Yogurt
5   Canyon five miles away from the port of entry.  And then when
6   he was found by Agent Cisneros up against that crevice, he
7   admitted the truth, which is that his purpose for entering was
8   to find work.
9          These facts establish that this is a simple case and
10  the defendant is guilty of the two crimes that are charged.
11  And they are two related crimes as Judge Burns has just
12  instructed you.  Count one is attempted unlawful entry after a
13  prior conviction of the same offense, and count two is
14  attempted reentry of a removed alien.  After he'd been removed,
15  he came back.
16         And we'll walk through each of these elements briefly
17  and I think it's right that most of these elements are not
18  really in dispute.  I think you heard Mr. Dudani in his opening
19  statement say that most of these are not in issue, and I think
20  that that's right.  Based on the evidence, most of these are
21  not an issue at all.
22         These are the five elements for count one, attempted
23  unlawful entry, and I will go through them, though, because
24  it's still our burden to prove every element so I will go
25  through them and show you, give you confidence that each of

ER-373

1   these elements has, in fact, been met.

2          The first is that Mr. Cabrera is an alien, just a

3   noncitizen of the United States.  And we know that for various

4   reasons.  His actions prove he's not a citizen of the United

5   States because citizens of the United States come through ports

6   of entry.  They don't climb over Yogurt Canyon with the barbed

7   wire fence.

8          He admitted to Agent Cisneros that he was not a

9   citizen of the United States and he also previously admitted,

10  you saw the video with Agent Montoya, that he's not a citizen

11  of the United States.  There's no question -- and he's also

12  been previously deported which is another factor that you can

13  take into account.  There's no question that he is not a

14  citizen of the United States.

15         The next is that he had the specific intent to enter

16  the United States at a time or place other than is designated,

17  so outside of a port of entry where inspections happen and

18  there's no question of that as well.

19         Yogurt Canyon is not a port of entry and the defendant

20  made the intentional decision to jump the fence there.  He --

21  after jumping the fence, he intentionally moved north towards

22  the secondary fence.  He admitted as we know that he jumped the

23  border fence.  He admitted that to Agent Cisneros.

24         This wasn't confusion.  He didn't mistakenly jump the

25  fence there.  It was intentional.  It was intentional that he

```
1    did that.  And why?  It's because he didn't have the papers
2    that would let him come through at a port of entry, so he
3    intentionally, he had the intent to enter outside of a port of
4    entry through Yogurt Canyon.
5          The third element is the specific intent to enter the
6    United States free from official restraint.  I'm going to save
7    that one because I think the defense said that is the element
8    that is an issue and I'm going to address that at the end when
9    I'm addressing both counts because that same element applies to
10   both counts.  So I'm going to go to substantial step.
11         There's no dispute that there's a substantial step in
12   this case.  The defendant actually climbed over that fence.
13   That alone is a substantial step.  He actually crossed into the
14   United States and then he took a whole bunch of substantial
15   steps up that hill up to the secondary fence.  This was not
16   mere preparation.  He, in fact, crossed over into the United
17   States.
18         The fifth is that he suffered a previous illegal entry
19   conviction, and I want you to be careful on this point because
20   I don't want you to hold this against the defendant in any way.
21   This is an element that we have to prove and that's solely how
22   you should perceive this element.
23         You should give him a fair trial.  Do not hold this
24   against him in any way.  Other than that, it's an element that
25   we have to prove.  And there's no question that he does, in
```

ER-375

1  fact, have a prior illegal entry conviction.  Exhibit 22 is a

2  judgment in a case involving United States of America versus

3  Juan Carlos --

4         MR. DUDANI:  Objection, Your Honor, as to the

5  redaction issue that was discussed pretrial.  This was not the

6  admitted exhibit.

7         THE COURT:  All right.  If it's not, don't show

8  something --

9         MR. MCDONALD:  I won't show that.

10         THE COURT:  -- that is different.

11         MR. MCDONALD:  I do see that there was a redaction to

12  be made.  I've pulled that off of the screen.

13         You'll see Exhibit 22 is a certified judgment and it

14  says Juan Carlos Cabrera is the defendant and it indicates that

15  he was convicted of an offense under 8 USC 1325, which is the

16  exact offense that the United States must prove.

17         Exhibit 21 that was admitted is the plea agreement

18  from that case and you see that the defendant agrees to plead

19  guilty to a single count superseding information charging that

20  and you can see the language there that he agrees to plead

21  guilty to a certain offense.  And the bottom of that is an

22  offense in violation of Title 8, United States code, Section

23  1325, a misdemeanor.  So that's what he agreed to plead guilty

24  to.

25         Now, how do we know that this is the same Juan Carlos

ER-376

1    Cabrera?  Well, Exhibit 20, which is a certified docket sheet,

2    it shows, and you can see it here, that the arrest date

3    associated with this case was August 10th of 2017 and the plea

4    agreement references that same date.

5            Well, what else do we know about August 10th of 2017?

6    That was the same date that Agent Montoya interviewed the

7    defendant, August 10th of 2017.  And then the defendant's

8    fingerprints, as you heard from Ms. Hogue, they match the

9    fingerprint card that was taken from the defendant on August

10   10th of 2017.

11           And here's that fingerprint card.  This was on

12   8/10/2017.  His fingerprints were taken.  Ms. Hogue took

13   separately his fingerprints and they match.

14           So there's no question that the defendant is the same

15   Juan Carlos Cabrera.  That would be a huge coincidence that all

16   these things would have aligned and it not be him.

17           For count two, attempted reentry of a removed alien,

18   several of the elements we've already talked about, so they're

19   already crossed over.  Element 2, that he's an alien.  Element

20   5, substantial step.  There are a couple of additional elements

21   and all of them are met beyond a reasonable doubt.

22           The first is that the defendant's been removed or

23   deported from the United States before.  And that's established

24   beyond any doubt.  Multiple times he has been deported from the

25   United States:  March 11th, 2002; November 4th, 2011; April 4th

1    of 2018, all of these show that he was removed by flight from

2    the United States.

3           He also admitted during his statement to Agent

4    Montoya, he admitted, this is Government's Exhibit 10A:  "Have

5    you ever been ordered deported, excluded or removed from the

6    United States?

7           "Defendant:  Yes.

8           "Did that occur after a hearing before an immigration

9    judge?

10          "Yes.

11          "And to what country were you deported?

12          "El Salvador.

13          "After you were ordered deported or removed, were you

14   removed by the immigration service or did you leave the United

15   States voluntarily?

16          "No, I was removed."

17          So there's no question based on the documents and

18   based on his own admission that he has been removed from the

19   United States.

20          There's a second question on the verdict form and it

21   will ask you, do you find that the defendant was deported after

22   December 18th of 2015.  And the answer to that is yes.  Here is

23   the document showing that he was removed on April 4th of 2018,

24   and that's after December 18th of 2015.

25          It's got his name.  His A-file number.  His

1    photograph.  It shows that the departure was witnessed by a

2    deportation officer.  This was the one document that Ms. Hogue

3    said there's not enough in this fingerprint for me to make a

4    comparison, but that does not in any way impact this removal.

5         For instance, on the removal document you see a

6    signature of the alien being fingerprinted.  You can see that

7    signature.  That's on the document.  And then on the

8    fingerprint card that Ms. Hogue said she could compare from

9    August 10th, the same exact signature from the same person is

10   on those two documents, and also, by the way, his picture is on

11   both of them.

12        So it's very clear that even though that fingerprint

13   was not -- too poor of quality, it's very clear that that was

14   the same person.  It is Mr. Cabrera.  You can see the

15   photograph.  He was removed after December 18th of 2015.

16        Fourth element, that he had no consent.  There's no

17   question.  The A-file custodian's testimony, he said he

18   searched the A-file.  He searched the databases and there was

19   no evidence of an I212 form being filed.  No evidence that an

20   I212 form request had been granted.  None of that.

21        The defendant's admissions, he said I don't have

22   papers to be here.  He admitted that to Agent Cisneros and the

23   defendant's actions, again, if he had permission, why would he

24   enter at Yogurt Canyon.

25        All right.  The final element for both counts and it

1   is specific intent to enter the United States free from

2   official restraint.

3          The defendant has disputed this, but ladies and

4   gentlemen, it's not disputed.  It's not in dispute.  It is

5   proven beyond a reasonable doubt.

6          Judge Burns has given you the instruction on this.

7   Review that instruction, follow that instruction.  Free from

8   official restraint means that the defendant had the intent to

9   enter the United States without being detected, apprehended or

10  prevented from going at large within the United States and

11  mixing with the population.

12         In other words, he wasn't trying to get caught.  He

13  was trying to get into the United States to find work, for

14  instance.  And there are various reasons why we know that this

15  is true.  That his intent was to be free in the United States.

16  He wasn't trying to get caught, the defendant's place of entry,

17  five miles away from the nearest port of entry in Yogurt Canyon

18  where visibility for border patrol is poor.

19         You heard about that canyon near Border Field State

20  Park with ample opportunity to hide.  We heard about the thigh

21  deep marsh and shrubs and things like that that individuals can

22  hide in in that area across from Imperial Beach in the

23  distance.  And Agent Cisneros said, once someone reaches

24  Imperial Beach, it's very difficult to apprehend individuals

25  once they reach that point.

1     Defendant crossed in this location by design.  It was
2 because it gave him an opportunity to go freely into the United
3 States.  Consider also his effort at the entry.  He first
4 climbed through brush.  You can see the exhibits that the
5 defendant himself admitted, the brush on the Mexico side
6 leading up to Yogurt Canyon, the fence there, he went through
7 all of that extensive brush just to even get to the fence.
8     MR. DUDANI:  Objection, facts not in evidence.
9     THE COURT:  No, overruled.
10     MR. MCDONALD:  Then he climbed that large fence
11 complete with barbed wire on the top.  Then he climbed that
12 steep and large hill.  He would not do these things if he was
13 simply trying to go into custody.
14     There's a lot easier ways to go into custody than what
15 he did.  He was not trying to go into custody.  He would choose
16 an easy place right next to a border patrol agent to go into
17 custody if that's what he intended.
18     Here's that barbed wire and there's that steep hill.
19     What did he not do?  Well, another reason, his actions
20 after entry show that he intended to be free from official
21 restraint.  And let's first consider what did he not do?
22     Well, he didn't walk towards border patrol.  He didn't
23 try to attract attention in any way.  When he gets to the top
24 of that hill, he's made it.  If he's trying to get caught, here
25 I am.  Come get me.  Come find me.  I'm here.  But he didn't do

ER-381

1     that.

2           Never on that video did he wave.  Never did he do

3     anything like that.  He didn't walk -- he didn't walk towards

4     Agent Cisneros, his vehicle down towards the left towards the

5     ocean.  He didn't do that.  He didn't yell for help.  He didn't

6     do any of that.

7           He didn't claim he was coming to go into custody

8     during his conversation with Agent Cisneros.  He didn't claim

9     he was coming to seek asylum or anything like that.  He also

10    didn't sit down on the nice guardrail after he had come up that

11    big long hill and he was really tired, there's that guardrail

12    right there.  If he wanted to get caught, perfect place to sit

13    down and wait for someone to drive by.

14          What did he do?  Well, let's watch the video.

15          You can see him actively crawling to come up this

16    hill.  You see the hill on the right side of the screen.

17    That's a steep hill, that's a hard hill to climb.  And you'll

18    see that Mr. Cabrera, he gets tired.  He gets tired.

19          Here he is standing up, this is at 6:48 around 37

20    seconds of the time stamp.  One, two, three, four, five, six,

21    seven, eight, nine, 10, 11, 12, 13, 14, he's in one place.

22          He's tired because he's coming up that hill, he just

23    climbed a fence and now he's coming up a hill, he's tired, as

24    anyone would be climbing up that fence.

25          He continues coming up this fence and, like I said, in

ER-382

1   this entire video, he never tries to seek attention.  He never

2   does that, which if he was trying to go into custody, isn't

3   that what he would do?

4          We're just going to watch a small portion of this

5   video, again, here you'll see he makes several additional

6   stops.  Here he is, he's standing there, one, two, three, four,

7   catching his breath.

8          He continues heading north into the United States

9   towards that secondary fence.  Here he is taking another break.

10         And he gets -- he finally gets to the guardrail.  He's

11  at the guardrail.  You can see it on the picture on the bottom

12  right, and what does he do at the guardrail?  He skips right

13  over it.  He gets up and he walks on to the road.  He doesn't

14  sit there.  That would be a great place for him to sit.

15         And look what he does now, he's walking towards the

16  fence and then he turns east, he turns east and he walks east,

17  probably about 20 feet or so.  He's walking.  He's eyeballing

18  the fence.  He's considering how he's going to make further

19  entry.  And then what does he do?  He goes right up against the

20  crevice, the two-foot, jutted-out portion of the fence, the

21  place in this exposed area.

22         He knows he's exposed now.  He's on this road.  He's

23  exposed.  So what does he do?  He goes east.  Why doesn't he

24  just go straight ahead to the fence and sit down right there?

25  Why doesn't he sit down in the middle of the road?  No, he goes

1  to the one place in this strip of road that gives him some

2  cover, cover from the east at least.  He needs to catch his

3  breath.  He needs to catch his breath.

4       He's just jumped a fence and climbed a really big

5  hill.  The defendant's place of entry, his effort at entry, his

6  actions after entry and finally his own words.  Ladies and

7  gentlemen, you should take him at his word.

8       He admitted climbing over the border fence.  He

9  admitted having no papers to be in the United States.  He

10  admitted that his purpose for entering the United States was

11  not to claim fear, was not to seek asylum.  What did he say?

12  He said his purpose was to find work.  And Agent Cisneros was

13  very clear about those statements that the defendant made.

14       He said he was about three feet away from him.  No

15  difficulties understanding him and vice versa.  And that the

16  defendant, in fact, made those statements.

17       You should take the defendant's word that he was

18  coming to find work.  The defendant -- his intent was to be

19  free from official restraint.  Consider also the instructions

20  that the Court provided to you that the United States is not

21  required to prove that entry free from official restraint was

22  the defendant's sole intent.

23       So for instance, if at the time of crossing he

24  intended to be free from official restraint but was also okay

25  with getting caught, a plan B sort of, this element is

1    satisfied.

2          MR. DUDANI:  Objection, Your Honor, misstating the

3    law.  That is not what purpose means and that's not what's in

4    the jury instructions that the Court approved.

5          THE COURT:  Overruled.  Ladies and gentlemen, be

6    guided by the Court's instructions and what they specifically

7    say.

8          Mr. McDonald, you have a minute left.

9          MR. MCDONALD:  Thank you.

10          Or for instance if the defendant actually intended to

11    sneak into the country, but he changed his plans when border

12    patrol came up on him.  Did he changed his plans, then?  This

13    element is still satisfied.

14          There's no evidence that he was coming to get caught

15    and it doesn't make sense, just 19 months before his fear claim

16    was rejected and he was deported to El Salvador.  On November

17    4th of 2019, ladies and gentlemen, he's not in El Salvador,

18    he's in Mexico, 2500 miles away from El Salvador.

19          And if he was entering to get caught, it's highly

20    likely that the same thing that happened 19 months before is

21    going to happen again and guess where he's going to get sent

22    back to.  El Salvador.  Doesn't make sense.

23          What does make sense, what he told Agent Cisneros

24    makes sense which is that he was coming for the purpose of

25    finding work.

```
 1              MR. DUDANI:  Objection, facts not in evidence as to
 2    the last bullet --
 3              THE COURT:  Overruled.
 4              MR. MCDONALD:  A reasonable doubt is based on reason
 5    and common sense, not speculation.  The United States has met
 6    its burden in this case as to both of the crimes that are
 7    charged and we ask you to return a guilty verdict on both
 8    counts.  Thank you.
 9              THE COURT:  All right.  Thank you, Mr. McDonald.
10              Mr. Dudani.
11               CLOSING ARGUMENT BY COUNSEL FOR DEFENDANT
12              MR. DUDANI:  Thank you, Your Honor.
13              The government has told you this is a simple case and
14    that is actually one thing that both sides agree on.  This is a
15    simple case because the disagreement between the two sides is
16    what was going on in Mr. Cabrera's head at that point that you
17    see in the video.
18              In other words, what was he trying to do?  Was he
19    trying to sneak in undetected or not?  Well, it's a simple case
20    because we have very good evidence to examine that.
21              We have about a 15-minute video that you have in
22    evidence that shows you exactly what he did right at that point
23    that he was inside the primary fence.
24              Now, I'm going to show you that clip, that clip that
25    you've seen a few times during this trial.  But before I do, I
```

ER-386

1  want to talk about the critical jury instruction that is going

2  to guide you in deciding this case.

3        The government talked about and Judge Burns talked

4  about this intent to enter free from official restraint

5  element.  That's in both counts and that's what this case comes

6  down to.

7        And you heard that what that means is trying to avoid

8  detection, avoid apprehension, and trying to mix with the

9  population freely.  In this case, get past that secondary

10  fence, go to Imperial Beach, mix with the population freely.

11        Now, I'm going to play the clip.  I know I'm up here

12  talking to you but I'd like you to pay attention to the clip

13  when I play it.  We're going to watch it together and we're

14  going to watch it through the lens of this jury instruction and

15  we're going to see where there's evidence of avoiding

16  detection, where there's evidence of avoiding apprehension,

17  where there's evidence of trying to mix with the population

18  freely.

19        Mr. Davis, maybe you can help me out there.  Thank

20  you.

21        Let's start with that first one.  Is Mr. Cabrera

22  trying to avoid detection in this clip.  Well, you heard what

23  Agent Cisneros told you yesterday.  You heard him tell you that

24  it's a brushy hill that he's on right now.  It's a brushy hill

25  and there's a depression here and this area causes a problem

ER-387

1    for border patrol.  It's harder to see people.

2            You are seeing Mr. Cabrera walk straight out of that

3    area on to the exposed border patrol road.  You don't have to

4    take my word for it, you have the video.

5            And that's what Agent Cisneros told you, that he is

6    walking straight up that hill, that he is not hiding, that he

7    is not hiding in any of the bushes, he's not hiding in any of

8    the brushy areas, and you're going to see that he is walking to

9    the lighter point.  That's what the black and white is

10   indicating, he's walking out of the darkness to the highest

11   point in the light on an exposed border patrol road.

12           This is not what it looks like when someone is trying

13   to avoid detection.  They don't walk straight to the highest

14   possible point on an exposed road and that's what we're seeing

15   Mr. Cabrera do.  He's continuing to walk.  He's still not

16   hiding.  He's still not avoiding detection or trying to,

17   rather.

18           Next we're going to talk about that second part of

19   official restraint, avoiding apprehension, is he trying to

20   avoid apprehension?  Well, what we're watching is happening in

21   daylight.  He's wearing a bright orange tee shirt, and you

22   heard Agent Cisneros explain to you that there's long stretches

23   of the border that are just desert and wilderness.  You have

24   that map in evidence.

25           This is in busy urban Tijuana.  This is just north of

1     that, there are several buildings right there.  There are

2     houses with backyards right up against that primary fence

3     that's just south of him.  This is not what it looks like when

4     someone has a plan to enter the United States, walk up in broad

5     daylight in a bright tee shirt, go to a public border patrol

6     fence -- road, exposed border patrol road, and just sit rather

7     than going in the desert, in the wilderness, anywhere else.

8           Now he is walking to the secondary fence.  The

9     government is telling you that it's evidence that he is trying

10    to sneak in undetected and mix freely with the population, that

11    he takes a few steps east.

12          Where Mr. Cabrera is sitting right now is the most

13    natural place in the world to sit if you're in that location.

14    He takes a few steps east and he sits down in that 18 inches

15    where there's a natural backrest and you're not going to see

16    any attempt to mix freely with the population.  You heard Agent

17    Cisneros tell you, there's no rope, there's no ladder.

18          And Agent Cisneros said, well, he sees that a lot,

19    ropes and ladders, but sometimes also if people are adept at

20    climbing, that's the word he used, if people are really good

21    climbers, sometimes they can do it without that.  And he said

22    that it takes about less than a minute.

23          The government is asking you to believe that it would

24    take him less than a minute at this point to climb over that

25    secondary fence somehow, I suppose because he's an adept

1   climber, and he doesn't do it. He sits for seven minutes. He

2   could do it seven times over but he chooses to sit.

3        And there's something you can infer about Mr. Cabrera

4   just from this video and what you know about him. You know

5   he's from El Salvador. You heard from Agent Cisneros that he's

6   2500 miles from home. And you know that he just found a way to

7   cross over the primary fence and is in-between the two fences.

8        You can infer from all that that Mr. Cabrera is a

9   desperate man. I don't think there's any dispute there. He's

10   a desperate man.

11        The government is asking you to believe that a man so

12   desperate that he came 2500 miles from El Salvador to sneak

13   into the United States chooses to sit down for a period seven

14   times longer than would be necessary to cross the fence because

15   he's winded. He's tired. He wants a rest. That can wait till

16   later.

17        I'm at the gates of the United States. I've come 2500

18   miles, but I'll take a breather. That does not make sense.

19   That 's not what you're seeing in the video. The video is the

20   best evidence in this case. It shows you what actually

21   happened and there's no attempt at sneaking in.

22        So we've seen the video. We've seen it several times

23   and we've seen that there's absolutely no indication of

24   sneaking in, just the opposite, the exact opposite. But the

25   other circumstances all point in the same direction and I've

1   talked about these.

2        That photo on the right that's admitted in evidence,

3   you'll have that with you in deliberation, that's the view from

4   the bottom of that short steep slope that Mr. Cabrera walked

5   up.

6        What is the plan there?  How is he going to enter the

7   United States, cross that fence and mix freely with the

8   population?  Does that make sense that this is the plan to

9   sneak into the United States in daylight, in this place.

10       This is an area with heavy border patrol surveillance.

11   Agent Cisneros told you that multiple times, heavy border

12   patrol surveillance.

13       He told you that helicopters are often seen right

14   there in the area just north of the secondary fence.  You have

15   photos in evidence, multiple border patrol vehicles right

16   there.  It's common sense.  It's a border patrol road

17   in-between the fences.  Obviously there's going to be border

18   patrol surveillance.

19       The circumstances all point to what the video shows

20   you.  He's sitting down and waiting to be arrested.  He's not

21   taking a breather.

22       Why?  Why is he doing that?  You can see on the video

23   he's waiting to get arrested but why?

24       Well, you can infer based on the evidence that you

25   heard yesterday.  Now, you heard a few things.  You heard that

1  he applied for asylum in 2018.  And you heard that that claim

2  was rejected.  The decision was made that it didn't meet the

3  legal requirements of asylum, but I want to explain a very

4  important point that may have gotten lost in all the testimony.

5  Mr. Cabrera was found credible in that process.

6        The asylum officer found him credible.  That means

7  they believed him.  He said, I have a fear of returning to El

8  Salvador and they believed him that he did.  They found him

9  truthful in what he said.  But they concluded it didn't meet

10 the legal requirements, all the technical legal requirements

11 for asylum.

12       Now, you heard Agent Alexander tell you yesterday that

13 immigration law is very complicated, that even these veteran

14 experienced border patrol agents only know small parts of

15 immigration law.  I don't blame them, believe me.  It is very

16 complicated.

17       Whether his claim met all the technical legal

18 requirements for asylum is not nearly as important as what's in

19 his mind for this case.  Right?  That's what you're deciding

20 today, what's in his mind.

21       And you know he applied for asylum and the asylum

22 officer believed him when he said, I have a fear of returning

23 to my home country.  So you know he has a fear of returning to

24 his home country, and you know some other things.

25       Agent Cisneros told you that in November 2019 when

ER-392

1    this happened, there was a policy in place called Remain in

2    Mexico.  And Agent Cisneros told you that the new thing in

3    introduced by this policy is that if you apply for asylum at

4    the port of entry, you have to remain in Mexico while that

5    claim is being processed.

6            Now, Mr. Cabrera is from El Salvador, 2500 miles from

7    home.  The program's called Remain in Mexico but we know

8    specifically he was in Tijuana.  It's easy to see why someone

9    in that position, why it's a difficult position for someone

10   like Mr. Cabrera to be in.  This is in Tijuana, a city we're

11   all familiar with.  He's a foreigner there.  He's from

12   thousands of miles away.

13           And it's important context when you consider, well,

14   why would he choose to go about it this way.  The answer is he

15   wanted asylum without remaining in Mexico, and you know that he

16   knows you can apply after being taken into custody in the

17   United States.

18           He knows that turning yourself in is a way of getting

19   your asylum claim heard because that's what happened in

20   2017 --

21           MR. MCDONALD:  Objection, Your Honor, misstates the

22   testimony.  He didn't turn himself in.

23           MR. DUDANI:  I can clarify.

24           THE COURT:  Go ahead, Mr. Dudani.

25           MR. DUDANI:  What happened in 2017 is that he was

ER-393

1   asked, do you have a fear of return, you know, after being

2   taken into custody, he was asked, do you have a fear of return.

3   He said yes, and then his asylum application was heard.

4          So I want to be clear about what exactly you're

5   deciding today and what exactly you're not.  You're not

6   deciding today whether he gets to stay in the country.  That'll

7   be up to the separate immigration system.  That's not being

8   decided today.

9          You're deciding today whether he was trying to sneak

10  into the country or whether he was turning himself in.  The

11  government is accusing him of two federal felonies based on

12  trying to sneak in and you know he didn't do that because you

13  have the video and that's the only thing you're deciding today.

14         I understand also that many of you may feel that it

15  would have been better for him to go to the port of entry, it

16  would have been better to go to the port of entry, apply for

17  asylum there, rather than turn himself in and do it this way.

18         That's fine.  That's fine.  You can believe that,

19  that's fine.  That's not what we're deciding today either.

20  Because, again, the accusation is that he was not turning

21  himself in.  He was trying to sneak in undetected and you know

22  with your own two eyes that's not what happened.

23         I want to talk about a very important jury instruction

24  you just heard, which is that Mr. Cabrera is presumed innocent

25  unless the government proves beyond a reasonable doubt that

1   he's guilty of every element.

2           It's the highest standard in the legal system.  And it

3   means, you know, if he's possibly guilty, that's not beyond a

4   reasonable doubt, even if he's probably guilty, more likely

5   than not, even that wouldn't suffice to be proof beyond a

6   reasonable doubt.

7           What does that mean more concretely?  I'll try to give

8   you an example because, in daily life when we're making

9   important decisions, we apply a standard something like proof

10  beyond a reasonable doubt.

11          I'll give you a very clear example.  Imagine you're

12  going sky diving and you're about to take the plunge and then

13  someone presents you with a reason to think that maybe the

14  parachute is not going to work.

15          You will suddenly become an expert in that standard of

16  proof beyond a reasonable doubt.  You are going to look into

17  that.  You are going to take a critical eye.  And even if

18  you're persuaded that probably the parachute will be fine,

19  you're not going to accept that if there's a reason to doubt.

20          That's the same critical eye that the law instructs

21  you to take on every single element today.

22          So let's go back to that question, is there proof

23  beyond a reasonable doubt that he was trying to sneak in

24  undetected?  Of course there isn't.

25          I want to address a couple of the government's

ER-395

1  arguments, because the government needs to persuade you,

2  despite that video, where you can see for yourself that he's

3  waiting to get arrested and making no attempt to move past that

4  secondary fence.  The government needs to find a way of

5  persuading you anyway.

6          So they have put a lot of weight on a couple of things

7  that I want to address.  Number one, they're asking you to

8  convict Mr. Cabrera largely because of the statement he made

9  that he was here just for work, that's how Agent Cisneros put

10 it.  He said he was here just for work.

11         Of course he's here to work.  Asylum seekers come here

12 to live full, regular lives, just like all of us with the

13 benefit of the safety of this country.  Asylum seekers come

14 here to have families, to work, to have normal lives.

15         Of course he's here to work.  He doesn't expect to get

16 handouts for the rest of his life.  Everyone needs to work.  He

17 wants to do so with the safety and security that this country

18 affords us.

19         You heard Agent Cisneros tell you that the border

20 patrol is policing the border from drug smuggling, from

21 terrorism.  It's a very natural thing to say, I'm here just for

22 work.  I'm not causing trouble.  I'm here just for work.

23         Remember what Agent Cisneros told you.  These

24 interactions in the field as he put it do not typically include

25 questions about asylum.  He talked to you all about his

1   standard immigration inspection, that's what he called it, and

2   he said, yeah, it's not my job in the field to ask about

3   asylum, to ask about a fear of return.

4          And Mr. Cabrera knows that.  Again, you saw that 2017

5   interview and he's asked, do you have a fear of return.  He

6   said yes.  It was misrecorded, but you heard the agent clarify,

7   he said yes.  That wasn't out in the field.  That was after

8   being taken into custody.

9          Agent Cisneros didn't ask Mr. Cabrera, do you have a

10  fear of return?  Are you seeking asylum?  Because that's not

11  what happens in the field.

12         And so all the weight the government is putting on

13  that one sentence is absolutely nothing about that that

14  suggests that he's trying to sneak in undetected when you see

15  that's not what he's trying to do and when you have all the

16  background on him as an asylum seeker.

17         I want to address another point that the government

18  made today which is that he didn't wave down border patrol.  He

19  didn't yell asking for help.  Why would he do those things?

20  He's sitting on a border patrol road, perfectly exposed.  You

21  can see in the video, he's facing west.  The car is coming in

22  his direction.  There's nothing on that road but him and the

23  border patrol vehicle.

24         There's no reason to wave.  The car is coming.

25  Remember what Agent Cisneros told you.  When he was driving to

ER-397

1  Mr. Cabrera, there was no attempt to hide.  There was no

2  attempt to run.  He was sitting there content because he had

3  achieved his goal.  He was about to be taken into custody.

4        The government's theory of this case is that

5  Mr. Cabrera is so desperate to sneak into the United States

6  that he picks the perfect location.  I've already told you this

7  is far from the perfect location, but this is what the

8  government is telling you today.

9        The government's theory is that Mr. Cabrera plotted,

10  found the perfect location, had this plan, 2500 miles from

11  home, committing two federal felonies, and just decides, I'm

12  tired.  I'll wait.  I'll just wait.  And that does not make

13  sense.  In this case, you need to trust your own two eyes.

14  It's a simple case.  You have the video.  He's not avoiding

15  detection.  He's not avoiding apprehension.

16        There is no attempt or conceivable plan to mix freely

17  with the population.  Mr. Cabrera is not guilty.

18        THE COURT:  Thank you, Mr. Dudani.

19        Mr. McDonald, you've actually hit the 20 minutes, I'll

20  give you two, two additional minutes, so speak quickly.

21    REBUTTAL CLOSING ARGUMENT BY COUNSEL FOR THE GOVERNMENT

22        MR. MCDONALD:  There's no doubt in this case that the

23  defendant is guilty.  You know what someone intends based on

24  what they do and what they say.  And what Mr. Cabrera did and

25  said proves his guilt beyond a reasonable doubt.

ER-398

1       The defense actually admits and embraces that he did

2  tell Agent Cisneros that his purpose was coming to find work.

3  They didn't say there was a misunderstanding.  They didn't say

4  something was lost in translation.  They admit that he

5  came -- that he interacted with Agent Cisneros and said he was

6  coming to find work.  You should believe the defendant and what

7  he said.

8       Now they say he's a desperate, desperate man coming.

9  A desperate man, if he comes, he's going to get across and he's

10  going to say, I'm here.  Hallelujah.  Take me into custody.  I

11  made it.  Take me into custody, but he doesn't do any of those

12  things.

13       This is not a desperate man.  He intentionally entered

14  the United States intending to mix with the population,

15  intending to find work.  You should take the defendant's word.

16  There's no reasonable doubt in this case.

17       They talked about that there's no attempt to climb the

18  fence.  Well, you saw the video, he's gassed when he gets to

19  that fence, and it does him no good to try to go right up it

20  when he's worn out, when he's tired.  He should stay down, stay

21  low until he's ready.  All right, let's go.

22       There's the horizontal bars on the fence where people

23  can climb up they can get over it really fast, you saw that.

24  And there's no question he can climb fences because he just

25  climbed one a couple minutes before.

ER-399

1          This case isn't about asylum.  It's not about

2     defendant's intent from April of 2018.  It's about his intent

3     on November 4th of 2019.  This isn't about the backlog of

4     asylum claims from 2018 and 2019.  This is about the defendant,

5     his intent to enter and that's clear, that he was coming not to

6     get caught, but to go freely within the United States.

7          There's no reasonable doubt as to the elements that

8     the United States must prove and we would ask and I'll note

9     that they did not contest any of the other elements.  We ask

10    you to find the defendant guilty on both counts charged.

11         Thank you.

12         THE COURT:  All right.  Thank you.

13         As I mentioned folks, there's about five remaining

14    instructions having to do with deliberations.  I'll give you

15    those now and I'll go over a verdict form with you which you

16    can record verdicts once you've reached them.

17         When you begin your deliberations, the first thing you

18    should do is elect one member of the jury as the -- I guess it

19    didn't work, huh.

20         Folks those who are here, you need to stay until I

21    finish the instructions.  I think most of you have gotten the

22    message before, but you need to stay because it's disruptive to

23    have people get up and leave while instructions are being read.

24         If you want to come and listen to the closing

25    arguments, you certainly can do so but please spread the word

1  room for you to begin your deliberations.

2        Jury is not present.  Counsel and the defendant are

3  present.

4        Both sides agree that the jury instructions, subject

5  to the objections that were made, were read as agreed upon?

6        MR. DUDANI:  Your Honor, there is one point on that.

7        THE COURT:  Uh-huh.

8        MR. DUDANI:  The Court extemporaneously said regarding

9  the dual intent doctrine, so I know our objections were made

10  and overruled.

11        THE COURT:  Yeah.

12        MR. DUDANI:  That's fine.  But the Court said as to

13  each count that it suffices for guilt if part of his purpose

14  was the mens rea, but I would object to that because it needs

15  to be -- there needs to be a fully formed intent.

16        Now we lost the argument --

17        THE COURT:  I didn't say anything about fully formed,

18  I just said if he had a dual intent, that was still sufficient

19  as long as the government proved at the time that he entered

20  that his purpose was, his specific intent, I even used that

21  word, was to -- was to come in and go at large among the

22  public, so there was no deviation, extemporaneous or not, from

23  what the law is and what I found that the instruction should

24  say.

25        MR. DUDANI:  Your Honor, can I clarify?

```
 1              THE COURT:  Yeah, sure.

 2              MR. DUDANI:  What the Court just said, I completely

 3    agree, it's in conformity with the written instructions and we

 4    had the argument yesterday.  The Court did say twice as to each

 5    count part of his purpose, if part of his purpose was the

 6    illicit purpose.

 7              THE COURT:  Right.

 8              MR. DUDANI:  But that's -- and I would object because

 9    there needs to be a full-fledged intent.  It can't be part --

10              THE COURT:  You're conflating things, though.

11              I mean, part of his purpose doesn't mean that it

12    wasn't full-fledged.  What you're doing is saying, no, it has

13    to be his exclusive purpose to come.  That's not what the law

14    is.  We went over that yesterday.

15              If he has dual motives, if he says I want to come in,

16    that's one of my purposes, but if I get caught, I'm going to

17    resort to saying, well, I want asylum.  That suffices as long

18    as the government proves that he had the specific intent at the

19    moment of entry to come in.

20              I didn't say anything different from that.  Your

21    objection is noted and overruled.

22              Anything else then?

23              MR. DAVIS:  Your Honor, I would like -- if the

24    government has anything?

25              MR. MCDONALD:  Go ahead.
```

ER-402

```
 1                    UNITED STATES DISTRICT COURT

 2              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3

 4   UNITED STATES OF AMERICA,           )
                                         )
 5        Plaintiff,                     ) No. 20-CR-435-LAB
                                         )
 6            v.                         )
                                         ) June 7, 2021
 7   JUAN CARLOS CABRERA,                )
                                         ) 3:48 p.m.
 8        Defendant.                     )
     _____ ) San Diego, California
 9

10              TRANSCRIPT OF MOTIONS IN LIMINE HEARING
                BEFORE THE HONORABLE LARRY ALAN BURNS
11                  UNITED STATES DISTRICT JUDGE

12   APPEARANCES:

13   For the Plaintiff:       UNITED STATES ATTORNEYS OFFICE
                              By:  COLIN MCDONALD, ESQ.
14                                 AMANDA MUSKAT, ESQ.
                              880 Front Street
15                            San Diego, California  92101

16   For the Defendant:       FEDERAL DEFENDERS OF SAN DIEGO, INC.
                              By:  BENJAMIN P. DAVIS, ESQ.
17                                 SALIL DUDANI, ESQ.
                              225 Broadway
18                            San Diego, California  92101

19

20   Court Reporter:          CYNTHIA R. OTT, RDR, CRR
                              District Court Clerk's Office
21                            333 West Broadway, Suite 420
                              San Diego, California, 92101
22                            cynthia_ott@casd.uscourts.gov

23

24
     Reported by Stenotype, Transcribed by Computer
25
```

1          THE COURT:  Okay.

2          MR. DAVIS:  And the government said they weren't going

3  to introduce anything after that.  So --

4          THE COURT:  Okay.  So that had to do with, what, a

5  post-arrest statement?

6          MR. DAVIS:  Yes, Your Honor, he invoked and then --

7          THE COURT:  Okay.  And now -- now you're challenging

8  whether Miranda rights should have been given upon the

9  encounter with him near the fence?

10          MR. DAVIS:  Yes, and Mr. Dudani is prepared to argue

11  that motion today.

12          THE COURT:  All right.  I'm happy to hear from you.

13  I've read the papers.

14          MR. DUDANI:  Thank you, Your Honor.

15          THE COURT:  Uh-huh.

16          MR. DUDANI:  Your Honor, let me just start by

17  contrasting this case to most field statements.  I submitted a

18  video that maybe the Court had a chance to review, and this

19  incident was captured on video.

20          THE COURT:  Uh-huh.

21          MR. DUDANI:  Most of the time, field statements don't

22  raise the, you know --

23          THE COURT:  Custody.

24          MR. DUDANI:  Don't support a finding of custody

25  because it's in the field, it's public, it's in the desert

```
 1    or --
 2              THE COURT:  Custody issue.
 3              MR. DUDANI:  -- or it's in a vehicle.
 4              THE COURT:  Right.
 5              MR. DUDANI:  It's a roadside stop.  Those are easy
 6    cases.  This case is very different on the facts as they
 7    pertain to custody.  The Court has seen the video.  Mr. Cabrera
 8    was hemmed in-between the secondary fence, the Border Patrol
 9    vehicle, and the Border Patrol agent, all right there within
10    feet of him on -- on those three sides.  That's one point.
11              Another point is that he is in a restricted area.  He
12    is in-between the border fence and the secondary fence.  And so
13    this is not the ordinary situation when it comes to field
14    statements, and these facts strongly support a finding of
15    custody.
16              I think there's some other important differences that
17    follow from those facts.  One is in these other roadside cases
18    or in -- kind of in the desert cases, you know, there are some
19    special Fourth Amendment rules governing these border
20    interactions and part of that is motivated by the need --
21    obviously the need for the agent to determine is this an
22    immigration interaction, is this person an alien, do I have
23    probable cause to take this person into custody for that
24    reason?
25              This case is different because he's in a restricted
```

1    area.  That alone generates probable cause to take him into

2    custody.  It's not the -- it's not the typical kind of

3    immigration interaction out into the field.

4            THE COURT:  Wait.  You're saying anybody in proximity

5    to the fence can be arrested regardless of their citizenship?

6            MR. DUDANI:  Let me rephrase that.  You know, under 19

7    USC 1459, any person regardless of citizenship is prohibited

8    from entering not at a port of entry.

9            And so I do think when a person is in no man's land

10   in-between the two fences just inside the United States, it's

11   not the ordinary -- the ordinary justification is that, hey,

12   you need to do an immigration --

13           THE COURT:  I agree with you.  I agree.  It's unusual.

14           I think once or twice I've had people walking around

15   down in these areas that it turned out to be lawfully in the

16   United States or citizens, but -- it doesn't happen all of the

17   time, but it's another thing to say just by virtue of being

18   there, without any questioning at all, that the Border Patrol

19   have authority to arrest them.

20           MR. DUDANI:  Fair enough.  I think another point to be

21   made about the unusual -- kind of how this is different than

22   the typical border case is that that line of cases that talks

23   about border interactions, you know, Terry stops at the border

24   being okay, those are Fourth Amendment cases, they're special

25   Fourth Amendment principles, and so most of the time it's an

1   easy case.  It's clearly a Terry stop under the Fourth

2   Amendment.  It's clearly not custody under Miranda.

3         There's no special exemption for the general custody

4   principles of the Fifth Amendment, even if near the border.

5   And so --

6         THE COURT:  Yeah, I -- I agree with that.  I agree

7   with that.

8         MR. DUDANI:  And ultimately -- yeah.

9         THE COURT:  But there's also likewise no prohibition

10   that prevents Border Patrol from approaching someone and asking

11   them questions if they're in the proximity of the border.

12         MR. DUDANI:  I agree with that.

13         THE COURT:  Without Miranda warnings.  They don't have

14   to give Miranda warnings just because somebody's close to the

15   fence.

16         MR. DUDANI:  I think one factor is being in no man's

17   land, but another factor is being hemmed in by a Border

18   Patrol -- by the vehicle and by the agent.

19         THE COURT:  Yeah.

20         MR. DUDANI:  It would not have been reasonable for

21   Mr. Cabrera to feel free to leave in the restricted area.

22   That's not reasonable to believe.  And so in combination with

23   being surrounded, being in no man's land strongly supports a

24   finding of custody.

25         And I think -- I think that on these facts, the

ER-407

1  custody argument is strong.  And I think the closer question

2  has to do with the booking exception.  And if the Court likes,

3  I can proceed to that, the booking exception, which --

4  which would -- well, let me just back up.  Our position is that

5  this was interrogation and the booking exception does not apply

6  because these are questions about elements of the offense.

7          But I want to highlight for the Court that if the

8  Court does not accept that position, some of these questions

9  clearly fall outside the booking exception and also clearly

10  fall outside what an ordinary immigration inspection kind of

11  incident to a Terry stop would include.

12          There are four statements here.  The first one is a

13  statement about citizenship, that he's a citizen of El

14  Salvador.  Again, our position is that the booking exception

15  doesn't apply, but if the Court disagreed, that one would be

16  the kind of question substantively that's included there.

17          He doesn't have documents, and then the third -- the

18  third statement is that he climbed over the primary fence.

19  That is not necessary for an immigration inspection.  That's

20  not an ordinary part of a border Terry stop, just establishing

21  alienage, lack of permission.  And that's certainly not a

22  booking question.

23          The fourth statement is even clearer.  The fourth

24  statement is in response to a question about the purpose for

25  coming.  Why -- what's your motivation?  Of course, that

ER-408

1  wouldn't be supported by --

2         THE COURT:  In sequence, is that the fourth question

3  that was asked after they ascertained the answers to the first

4  three?

5         MR. DUDANI:  Exactly.

6         THE COURT:  Okay.  And what -- I'm sorry.  Remind me

7  what was his answer when he was asked that?

8         MR. DUDANI:  To come to work.

9         THE COURT:  Okay.  All right.

10        MR. DUDANI:  Unless the Court has questions, those are

11 the arguments in favor of suppressing the statements.

12        THE COURT:  All right.  Mr. McDonald?

13        MR. MCDONALD:  Your Honor, this was an excellent field

14 immigration inspection asking exactly the questions that a good

15 Border Patrol agent should ask in this circumstance.

16        THE COURT:  The third one -- or the fourth one seems

17 to me problematic.  By the time they've ascertained that he's a

18 citizen of El Salvador, he has no documents or permission to be

19 in the United States, he just climbed over the fence, the

20 fourth one actually goes to an element of the crime.  It goes

21 to proof.  It doesn't go to them convincing themselves that he

22 should be arrested.  They know that after they've ascertained

23 the first three, right?

24        MR. MCDONALD:  Well, not quite, because when someone

25 jumps over the fence, if they're coming to go into custody, if

1   they're coming in to go into Border Patrol custody, that's

2   something that the Border Patrol has to ascertain.  There are

3   give-ups, for instance, where if they say I was coming to go

4   into custody, then they know that they're not going to

5   prosecute that case.

6           In this case, he asked him what was your purpose for

7   coming?  And he said that my purpose was coming to go to work.

8           But more generally, Your Honor, there's no, you know,

9   three questions only rule for Border Patrol agents when they

10   encounter someone in the field.  Berkemer v. McCarty, way back

11   from 1984, says that an officer may ask a detainee a moderate

12   number of questions to determine his identity and to try to

13   obtain information confirming or dispelling the officer's

14   suspicions.  This was just basically four questions, Your

15   Honor.

16           Otherwise, the encounter itself is a traditional

17   standard Terry stop.  And I'll just quote the Ninth Circuit

18   from Gutierrez-Salinas, 640 Fed. Appendix 690:  "The Ninth

19   Circuit has repeatedly held that brief questioning near the

20   border is a noncustodial Terry stop that does not trigger

21   Miranda."  And there's nothing about this stuff that makes it

22   any different.

23           The Court has seen the video.  The agent comes up on

24   an individual up against the secondary fence and asks some

25   simple questions.  He does not handcuff him, as was suggested

ER-410

1    in the defendant's motion.  You can see the defendant, for

2    instance, once he gets into the Border Patrol vehicle, putting

3    out his arms in a way that would not be possible to be

4    handcuffed.  So this is a standard Terry stop, and all four

5    questions were -- were reasonable and appropriate within the

6    Terry stop exception.

7              MR. DUDANI:  Your Honor, may I respond?

8              THE COURT:  Yeah, sure.

9              MR. DUDANI:  First on whether there might have been a

10   defense available about specific intent and so he had to ask

11   that fourth question, that -- even -- there was probable cause

12   to take him into immigration custody at that point.

13             So we're talking about Border Patrol at the border and

14   there's --

15             THE COURT:  But this -- this Miranda warning applies

16   to criminal custody, right, not immigration custody?  There's

17   no requirement to give Miranda warnings before taking somebody

18   into immigration custody.

19             And the point the government makes is, look, this

20   under Ninth Circuit law and it's kind of a crazy quilt here

21   about, you know, who has to be given warnings under what

22   circumstances -- I take that back.  Not who has to be given a

23   warning.  Under what circumstances a person physically present

24   without permission in the United States can be prosecuted or

25   has committed the offense implicates this official restraint

1    doctrine.  And I don't disagree with Mr. McDonald that, you

2    know, to make sure that he's got probable cause to arrest, he's

3    got to assure himself that the defendant's intent -- the Ninth

4    Circuit has said this -- subjective intent was to go at large.

5           It's not just physical presence here.  It's not just

6    objective.  You have to ascertain the subjective intent of the

7    person.  And without that, it's a complete defense to the

8    charge and it's probably -- if you know otherwise or he says

9    I'm coming to be arrested, that may cut against the efficacy of

10   the arrest.

11          That's the problem I'm having with it.  It's -- it's a

12   difficult standard to deal with because, as I said, you know,

13   it's hard to get -- for lay people to get their mind around the

14   fact that, wait a minute, he jumped over the fence, his feet

15   are here in the United States, what part of enter hasn't he

16   done?

17          But we have this legal fiction that, well, if you're

18   under continuous restraint, you know, you're not in, and if

19   your intention is to turn yourself in, then you're not coming

20   in with the required intent, which is to go about at large in

21   the population, not just to turn yourself in.

22          I think under the cases, the Border Patrol -- it's

23   wise to, you know, ask that follow-up question before they

24   place somebody under arrest.

25          MR. DUDANI:  Your Honor, and maybe it's wise and in

 1  some broader sense appropriate for --

 2          THE COURT:  Well, it goes to probable cause, in other

 3  words.

 4          MR. DUDANI:  Well, so, Your Honor, what we're talking

 5  about is whether it's admissible in the criminal case.

 6          THE COURT:  Right.

 7          MR. DUDANI:  And so, you know --

 8          THE COURT:  Actually what we're talking about is

 9  whether it's inadmissible because they didn't advise Miranda

10  warnings.

11          But you're asking me to suppress, which is at its base

12  a deterrent to the -- to the police.  It punishes the police

13  and says don't do this again, we're going to deter you by

14  suppressing the statement here.

15          That's the real context of this, right?

16          MR. DUDANI:  Border Patrol had probable cause to

17  arrest him, if only for an immigration purpose and -- even if

18  only for an immigration purpose, and --

19          THE COURT:  Then -- then we're not -- why are we

20  talking about Miranda if it's just for an immigration purpose?

21          MR. DUDANI:  Because we're talking about its

22  admissibility or inadmissibility in the criminal trial.  So

23  it's not contradictory to say that, well, he had probable cause

24  as an immigration officer and didn't need to ask that fourth

25  question.

ER-413

1      THE COURT:  I don't know.  I mean I don't -- I don't
2  know that to be true.  Does -- do they have the right to arrest
3  if they believe that the person's subjective intent was just to
4  be arrested or if he's being chased by people that are going to
5  do harm to him -- can they arrest him for an immigration
6  offense?  I mean if they can, that's a clear difference between
7  what's required for a criminal offense and what's required for
8  an immigration offense.  So I don't understand the point.
9      MR. DUDANI:  Well, I -- I think it happens all the
10  time that people are taken into immigration custody, and from
11  there, their claim that they're there in order to get arrested
12  is --  is evaluated in immigration court.
13      I -- it's not even clear to me that there wasn't
14  probable cause.  I -- let me step back and address the
15  contention that the Ninth Circuit case law is clear on these
16  kinds of interactions.  I don't agree and the unpublished case
17  -- the published cases that the unpublished case that the
18  government cited relies on, the published cases have exactly
19  those facts that I started contrasting this case to.  Those are
20  car cases and those are kind of in the public, in the
21  wilderness, in the desert type cases.
22      And in those situations -- you know, in those
23  situations, there's a clear rationale for immigration
24  inspections that doesn't apply here, and those are akin to
25  roadside stops like in Berkemer where there is publicity and

1    you're not in a restricted area where obviously you're not free

2    to leave.

3         And -- and so -- I mean I think that also relates to

4    the point that we're talking about that that fourth question

5    was clearly unnecessary in this context, you know, in this

6    context where he's already in the no man's land where clearly

7    there's authority and probable cause to arrest him and clearly

8    the officer went outside the limited immigration inspection.

9    Maybe questions like that need to be asked in some

10   circumstances, but not -- not in this one.

11        THE COURT:  All right.  In the context of the -- this

12   is charged as an attempt, isn't it?

13        MR. MCDONALD:  Yes.

14        THE COURT:  Yeah, in the context of attempted entry

15   into the United States after being deported, the government

16   bears the burden of establishing lack of official restraint.

17   The government doesn't have to disprove speculative unsupported

18   evidence, but it otherwise does have to prove that the

19   defendant had the intention to come in and go free among the

20   populace, not some purpose just to turn himself over to Border

21   Patrol at the time.

22        And in the absence of that, the jury must find the

23   defendant not guilty where that's the issue.  It's relevant not

24   just to the commission of the crime.  It's relevant to probable

25   cause to arrest a person on that.  So to begin with, I don't

ER-415

1   find that the fourth question put to him, what was your

2   purpose, is out of bounds.  I find that that is a question that

3   goes to probable cause.

4          Going back for just a second to the question of

5   whether the defendant was in custody.  Miranda requires three

6   things, custody, focus, and interrogation.  There's no question

7   that there was interrogation.  There's no question there was

8   focus.  When you find somebody close to the border like that,

9   you're homing in on a particular offense, immigration offense.

10  The question here is whether the defendant was in custody.

11         The Supreme Court has said that's a significant

12  deprivation of personal freedom.  The Ninth Circuit has defined

13  it more broadly.  But the Ninth Circuit has recognized that

14  these encounters to ascertain whether we're dealing with

15  somebody who has crossed in illegally or one of the weird

16  situations where some U.S. citizen or legal resident is down

17  wandering around down by the border fence makes it appropriate

18  to make inquiry.  And the fact that they make inquiry under

19  those circumstances doesn't convert it into custodial

20  interrogation.

21         I've looked at the -- the video.  You say, well, he's

22  hemmed in.  He's no more hemmed in than when a person is

23  apprehended by two Border Patrol agents that stand on either

24  side of his egress into the United States.  So the Court,

25  having reviewed the evidence here, does not find that the

ER-416

1  defendant was in custody for Miranda purposes.  I don't find

2  that this was custodial interrogation.

3     I find this is akin, as is -- as are most of the

4  cases, to a Terry stop where this is an encounter and the

5  Border Patrol are trying to ascertain what they have.  You can

6  say, well, it looks pretty evident what you have here, but

7  until they ask the question -- and, as I said, the Ninth

8  Circuit has inserted this evidence on attempt cases that the

9  subjective intent of the defendant is part of this, and in the

10  absence of an intent to come in and go free and about in the

11  United States, the person is not guilty because they're under

12  official restraint being caught under these circumstances, very

13  close, being watched the whole time.  So I think the need for

14  the Border Patrol to ascertain that his intent was to go at

15  large in the United States or go to work here is relevant.

16     So to sum up, he wasn't in custody for Miranda

17  purposes, in my judgment.  And all four components of what he

18  was asked in the field statements were relevant to the

19  assessment of whether probable cause existed.  The motion to

20  suppress is denied.

21     Okay.  I think that's it then, right?

22     MR. DUDANI:  Your Honor, I understand the Court's

23  ruling.  Just very briefly, I just want to say what I should

24  have said earlier, which is that after the third question when

25  Mr. Cabrera allegedly said that he climbed over the fence,

ER-417

1   there was probable cause for a violation of 19 --

2          THE COURT:  I would have thought that too.  But

3   subsequent case law, including case law in my own cases, have

4   said oh, no, no, it's the subjective intent that forms the

5   attempt and it has to be proved --

6          MR. DUDANI:  Right.

7          THE COURT:  -- and that has to be an element.  And I

8   remember Judge Bybee is saying, look, we're in this unusual

9   situation now where, you know, people -- people cannot be asked

10  in some circumstances, but they must be asked, you know, if

11  they're planning to turn themselves in.

12         And I think it's incumbent on the Border Patrol to

13  distinguish, you know, those situations and to say the

14  defendant's subjective intent was to go -- be free to go about

15  in the United States as was his determination.

16         So I have your point on that.

17         MR. DUDANI:  Right.

18         THE COURT:  Respectfully, I disagree with you.

19         MR. DUDANI:  Understood, and just to complete the

20  record, my -- my point is that there was ample probable cause

21  for a violation of 19 USC 1459 whose elements relate to failing

22  to report your arrival.  Climbing over the fence itself

23  violates that statute, and so the position is that there's

24  probable cause in that --

25         THE COURT:  Okay.  Got you.

ER-418

1          MR. DUDANI:  -- and even if a Terry stop had exceeded

2    the scope.

3          THE COURT:  All right.  The record is complete on

4    that.  The motion is denied.  The statements may come in.

5          Is there anything else to resolve prior to trial now?

6          MR. DAVIS:  Yes, Your Honor.  I want to -- I just want

7    to front for the Court an issue that may come up tomorrow --

8          THE COURT:  Uh-huh.

9          MR. DAVIS:  -- about a defense witness that we intend

10   to call.

11         We don't believe that this witness is an expert, but

12   we've provided expert notice to the government in an abundance

13   of caution.

14         THE COURT:  Okay.

15         MR. DAVIS:  And I just want to give the -- you know,

16   give the opportunity now to tell the Court.

17         THE COURT:  Yeah.  No, I'd rather do it now than hold

18   the jury out.

19         MR. DAVIS:  And the other reason that we may do this,

20   Your Honor, is that she -- our witness, we don't know exactly

21   when she's going to be called because we don't know how long

22   the court -- case is going to take.  I know 1326 trials in this

23   courtroom often take less than a day, but --

24         THE COURT:  3:00 in the afternoon, they'll probably be

25   done.

ER-419

1          MR. DAVIS:  We're having her come tomorrow afternoon.

2     The question that we're going to have is if the government is

3     not done with their case tomorrow afternoon, if we could call

4     her out of order.  I know --

5          THE COURT:  Sure.  Yeah, you can.

6          MR. DAVIS:  So this witness, Your Honor, her name is

7     Erica Pinheiro.  She's a legal director of an organization

8     called Al Otro Lado in Mexico.

9          THE COURT:  What's the name of it?

10         MR. DAVIS:  Al Otro Lado.  It means the other side in

11    Spanish.

12         THE COURT:  All right.

13         MR. DAVIS:  Al Otro Lado.  She's a -- she's an

14    American attorney who works in Mexico, lives and works in

15    Tijuana.  And what we intend to call her to testify, we believe

16    that her testimony is lay testimony, fact testimony, not expert

17    testimony.

18         THE COURT:  All right.

19         MR. DAVIS:  To front that for you.  So what we -- so,

20    big picture, Your Honor, we haven't been shy about what our

21    defense is going to be in this case.  We do intend to argue

22    that Mr. Cabrera did not have a specific intent to enter the

23    United States free from official restraint.

24         THE COURT:  All right.

25         MR. DAVIS:  And there's evidence in the record to

ER-420

1   support that.  For example, you know, we're going to rely on

2   the fact that he -- I don't know if the Court has reviewed the

3   footage of him, but he comes over the fence, walks straight up

4   to the border fence, sits down and waits for about seven

5   minutes before the Border Patrol come -- you know, he's waiting

6   for the Border Patrol to come get him.

7           THE COURT:  Uh-huh.

8           MR. DAVIS:  And he has also applied for asylum before

9   in the past, Mr. Cabrera has.  In 2018 he applied for asylum.

10          THE COURT:  Has that been acted on?

11          MR. DAVIS:  Yes, he was found credible, but it was

12  denied because of a -- you know, he hadn't met the evidentiary

13  burden.

14          THE COURT:  Okay.

15          MR. DAVIS:  But we believe that those two facts, the

16  fact that he, you know, in his most recent time in the United

17  States had sought asylum and the fact that when he crosses the

18  border and walks straight up the hill and sits down and waits

19  for the Border Patrol to come get him, allow us to argue the

20  inference that that's what he was doing --

21          THE COURT:  Yeah, I have no disagreement with that.

22          MR. DAVIS:  Okay.  So the -- the witness that we

23  intend to call, we are going to ask her -- she's going to --

24  prepared to testify about the factual situation in Tijuana in

25  November of 2019, specifically that as a result of the migrant

ER-421

1   surge that was well attested to and in the news at that time

2   and the government's policies including the remain in Mexico

3   policy and the metering policies, that there was an enormous

4   backlog of Central American migrants seeking asylum.  Thousands

5   of people were waiting, long line, you know, basically no hope

6   to come in through the port of entry.  And that -- this is from

7   personal experience, not from, you know, reports.  This is what

8   she has seen and interacted with.  And for that reason, that --

9   that many people were -- the word was that you could climb over

10  the fence and try to get your asylum application that way.

11          So we intend to offer her to put those facts before

12  the jury.  They can, you know, dispute the facts --

13          THE COURT:  She -- she doesn't know the defendant,

14  knows nothing of his personal circumstances?

15          MR. DAVIS:  No.  This is -- this is simply to describe

16  the situation at the border.  We think it's probative and

17  relevant because it certainly corroborates the idea that -- you

18  know, the evidence is going to come in that Mr. Cabrera is a

19  citizen of El Salvador.  The evidence is going to come in --

20          THE COURT:  Right.

21          MR. DAVIS:  -- that he has applied for asylum before

22  and that he walked straight up and sat down at the fence.

23          THE COURT:  Right.  Right.  I have no problem with

24  that.  I just --

25          MR. DAVIS:  And so we think this corroborates --

ER-422

1        THE COURT:  Go ahead.

2        MR. DAVIS:  I'm going to limit it.  I'm not -- here's

3   the thing:  I know the Court's likely concerned.  I'm not going

4   to be talking about the travails and how difficult it was --

5        THE COURT:  Yeah.

6        MR. DAVIS:  -- and all this other stuff, and I'm not

7   going to put a sob story in front of the jury about --

8        THE COURT:  Yeah.

9        MR. DAVIS:  You know, I'm not trying to get into

10  politics.  I'm not trying to --

11        THE COURT:  Right.

12        MR. DAVIS:  -- get into anything that would distract

13  the jury away from what this is.  We're going to target the

14  conversation to, really, a few bullet points, which is that

15  there was a backlog of people, the line to get in through the

16  port of entry was very -- thousands of people long.

17        THE COURT:  Right.

18        MR. DAVIS:  And I think that corroborates the idea

19  that someone who wants to apply for asylum might try to go get

20  into custody and put their application that way.  It supports

21  that inference, and that we argue the inference from those

22  facts.

23        So that's what we propose to do.

24        THE COURT:  The concern I have is something else you

25  said earlier, which was the word was that you could climb over

ER-423

1    the fence.  Word according to who?

2          MR. DAVIS:  I think that she would say she was aware

3    from -- you know, she'll lay a foundation that she -- she lives

4    in Tijuana, works in Tijuana with these populations and is

5    aware of --

6          THE COURT:  That there's a rumor circulating among

7    people that the way to do this is jump over the fence, how is

8    that probative of anything?

9          MR. DAVIS:  I guess what she would say is that -- that

10   she is aware that people -- that many migrants were electing to

11   try to cross the fence rather than to go through the port of

12   entry.

13         THE COURT:  Well --

14         MR. DAVIS:  Now, if the Court, you know --

15         THE COURT:  I wouldn't want her to say what the word

16   was.

17         MR. DAVIS:  Fair enough.

18         THE COURT:  It's collective hearsay, but, you know, if

19   she wants to say I'm personally aware there were a number of

20   people that were unhappy with the speed at which asylum was

21   being -- but I don't know what that gets us.  I mean it's not

22   like that's a legal defense.

23         Is your argument going to be that he was crossing over

24   to get his asylum claim reviewed again?

25         MR. DAVIS:  To go into custody so he could apply for

ER-424

1   asylum.

2           THE COURT:  Okay.  I mean that kind of flies in the

3   face of what he said if the proffer of the government is true

4   that he said, no, I'm coming over to work.

5           Did he mention anything about asylum?

6           MR. MCDONALD:  He did not.

7           MR. DAVIS:  That'll be our obstacle, Your Honor.

8           THE COURT:  All right.

9           MR. DAVIS:  But I think that the evidence is

10  relevant --

11          THE COURT:  I think circumscribed by that, you know --

12  I don't know, I mean I'm --

13          MR. MCDONALD:  Your Honor, I do have some arguments in

14  response.

15          THE COURT:  Sure.

16          MR. MCDONALD:  I don't think that this is appropriate

17  evidence and I think it is a tricky issue --

18          THE REPORTER:  Please slow down.  Please slow down.

19          MR. MCDONALD:  Yes.  It is -- it is a tricky issue,

20  probably better in a written motion, I think, to really flesh

21  this out, Your Honor.

22          We just were given this notice on June 2nd just a

23  couple days ago.

24          THE COURT:  Yeah.

25          MR. MCDONALD:  This expert notice.

1          THE COURT:  Yeah.  It's easy enough to conceive,

2   though.  I mean either it's relevant or it's not and, you know,

3   if relevant, is there any probative danger to it?

4          Sounds pretty harmless.  I don't know that it, you

5   know, backs up anything, the fact that people are jumping over

6   the fence because the lines are long, okay.

7          MR. DAVIS:  Your Honor --

8          THE COURT:  I mean your answer to that is not this

9   guy.  Not this guy because he never said word one about asylum.

10  He said he was coming to work.  So what's that have to do with

11  anything?

12         MR. MCDONALD:  I think, step number one, we're missing

13  a critical link to the defendant.  Unless the defendant

14  testifies that he was, in fact, coming for that particular

15  purpose, having someone come and tell the jury that some

16  unknown, unnumbered number of migrants crossed over the fence

17  in this particular area during this particular time, that opens

18  up a whole can of worms from a 403 prejudice perspective.

19         The United States then -- this -- this simple

20  immigration case would be expanded to really be a discussion

21  about the asylum procedures.

22         THE COURT:  Is there a relevancy issue to begin with?

23  Is there a 402 issue?

24         MR. MCDONALD:  There -- there is a relevancy issue I

25  think, unless -- unless there's a link to the defendant.

1    Unless he testifies that that's my --

2         THE COURT:  That's the problem I'm having, Mr. Davis.

3    You know, if he's going to say, look, my purpose -- I know what

4    I said to the agent or I didn't say it to the agent, whatever

5    he wants to say, but my purpose was to get asylum, then I can

6    see this as corroborative evidence.  But in the absence of

7    that, you're saying, well, because other people did it, that

8    must have been his purpose, and that doesn't follow.

9         MR. DAVIS:  No, Your Honor, I disagree.  First of all,

10   the defendant doesn't have to testify for us to -- to argue

11   inferences.  This is the case United States versus Rahm.  It's

12   993 F.2d 14 --

13        THE COURT:  Yeah, but where -- you're pulling this,

14   the concept of asylum, out of the sky.  Without some historical

15   underpinning that the defendant was trying to get asylum this

16   time, which is contrary to what they say he said, then, you

17   know, we're just pulling some concept out of -- out of the sky

18   and trying to impute it in this case.

19        MR. DAVIS:  I disagree, Your Honor.  He applied for

20   asylum in 2018.

21        THE COURT:  But it was denied.

22        MR. DAVIS:  Right.  But he can still apply again.

23        THE COURT:  Well, he can, but that doesn't -- that

24   doesn't prove that was the reason he came across.

25        MR. DAVIS:  It's an inference, Your Honor.

```
1            THE COURT:  Yeah.
2            MR. DAVIS:  We're allowed to argue inferences from
3    evidence --
4            THE COURT:  I don't --
5            MR. DAVIS:  And this case says that we -- the
6    government's allowed to do -- to argue inferences from
7    circumstantial evidence.  The case of Rahm says --
8            THE COURT:  But there's no question --
9            MR. DAVIS:  -- that the defendant does not have to
10   testify --
11           THE COURT:  Mr. Davis, there's no question that you
12   can allow inferences from circumstantial evidence.
13           The question is whether this is relevant evidence.
14           MR. DAVIS:  Right.
15           THE COURT:  And in the absence of -- of some proof
16   that his purpose -- you know, from him or otherwise, that his
17   purpose was to reapply for asylum, then her testimony doesn't
18   make any difference.  She's -- she doesn't know him.  She's
19   saying that a lot of people cross over to apply for asylum.
20   Well, that doesn't mean it's him.
21           MR. DAVIS:  I disagree, Your Honor.  I think it's
22   relevant because we are able to argue an inference from his
23   prior -- the Court has already agreed with this, that we can
24   argue an inference from his prior application --
25           THE COURT:  No, no, I haven't agreed with that.  I
```

ER-428

1   haven't agreed with that.  What I've agreed with is that you

2   can argue an inference that arises from circumstantial

3   evidence, but the fact that he crosses over doesn't raise a --

4   does not amount to circumstantial evidence of what his purpose

5   was.

6           MR. DAVIS:  That plus the prior asylum application.

7           THE COURT:  It was denied, though.  It was denied.

8           MR. DAVIS:  That doesn't matter, Your Honor.  The

9   question is not whether he has a likelihood of being granted.

10  The question is whether we can argue -- the jury could believe

11  that one reason -- the reason that he came across and sat down

12  and waited for the Border Patrol to come get him was because he

13  didn't want to wait for a line for six months in Tijuana with

14  thousands of other people.

15          THE COURT:  Now you're imputing to him something that

16  she cannot possibly say.

17          MR. DAVIS:  I'm not --

18          THE COURT:  He hasn't said that.  It would be entirely

19  speculation to argue that was his motive without his testimony

20  that was my motive.

21          MR. DAVIS:  I disagree, Your Honor.  I think the Ninth

22  Circuit case law is very clear on this, that we do not --

23          THE COURT:  All right.  I don't think it is.  I find

24  it's not relevant.  I'm not going to allow it.  Absent him

25  testifying that his purpose was to apply for asylum, then

1  that's corroborative evidence, but in the absence of that, just

2  to grab something out of the sky and say, well, a lot of people

3  cross for this reason, that must be his reason and the fact

4  that he'd applied for asylum before and been denied, I don't

5  think that that necessarily is evidence of what his reason was

6  on this occasion.  And then you're up against the fact that he

7  said, according to them -- didn't mention word one about

8  asylum -- said I came here to work.

9          MR. DAVIS:  That's their case, Your Honor.  That's the

10 government's burden that they're going to try to prove.  Our

11 argument --

12         THE COURT:  I -- I understand.  I'm just saying

13 there's not a link between her testimony and this defendant or

14 anything that happened in this case.  The motion to exclude her

15 is granted.

16         You have your objection to it.  You've made your

17 record.

18         MR. MCDONALD:  Your Honor, with regard to the

19 defendant's prior asylum application, that is also not relevant

20 for purposes of this case.

21         THE COURT:  No, I -- I agree.  I don't think we're

22 going to get into that at all.  I mean I just don't see it.  So

23 I agree.

24         MR. DAVIS:  I'm sorry, I missed that.  What was the

25 point that --

1       THE COURT: He says he doesn't think the prior asylum

2  application and what happened on that is relevant. I agree

3  with him.

4       MR. DAVIS: Your Honor, the Court is excluding our

5  entire defense. All right. We --

6       THE COURT: No, no. You can -- you can argue that,

7  look, given his proximity to the fence, the fact he sat down

8  for seven minutes, the fact that he wasn't running away, that

9  his purpose was to turn himself -- turn himself in.

10      MR. DAVIS: Right. But we have to be able to tell the

11  jury why he might do that, right? And we don't have to tell

12  them -- he doesn't have to testify and say I did this. I'm

13  allowed to argue inferences from the evidence, so I can say,

14  look, the fact that he's from El Salvador, has applied for

15  asylum before, walked straight up and sat down, and thousands

16  of people were waiting to get in through the port of entry and

17  coming over the fence, that -- you can infer from that evidence

18  that this is what he did in this case.

19      THE COURT: Yeah, I -- I just don't --

20      MR. DAVIS: Now, is it a strong inference? Can the

21  government rebut it? Sure, they can. They can try to with

22  their evidence. But the Court -- this is -- Your Honor, if the

23  Court is going to exclude this, this is violating our right to

24  a defense under the Constitution. I mean the Constitution --

25      THE COURT: No, I don't agree with you, Mr. Davis.

ER-431

1   Look, I'm very mindful of that, and -- and I usually bend over

2   backwards if there's some basis for it, but this is entirely

3   speculative.  It has nothing to do with showing what this

4   fellow's intent was.

5          The fact that other people are climbing over because

6   the word out according to this lawyer is that you can get

7   asylum that way or get -- that has nothing to do with this

8   fellow.  You know, nothing at all.

9          I mean, if it was true and inexorable that everybody

10  coming over the fence was applying for asylum, maybe.  But

11  that's not what she's going to say.

12         MR. DAVIS:  That's not what we're arguing, Your Honor.

13  And if the Court's concerned about --

14         (Discussion off the record.)

15         THE COURT:  Go ahead, Mr. Davis.

16         MR. DAVIS:  I understand what the Court is saying.

17  What I'm -- the point that I'm trying to make, Your Honor, is

18  that if the Court's concerned about this thing about the word

19  out and what other people are doing, then that's fine.  I don't

20  have to put that in.  But I think the facts on the ground that

21  there was a line of people trying to get in through the front

22  door and that line was several thousand people long and that

23  the wait in Mexico was taking forever to come in is admissible,

24  relevant evidence that I can raise -- that I can argue to the

25  jury you can infer from this evidence that that may be a reason

1  that he was coming in, and that coupled with the fact of his

2  prior asylum application, it gives a motive for why he would

3  come in and turn himself in to the police.

4          Because otherwise, what's the motive, right?  Why does

5  he come and sit down and wait for seven minutes sitting on a

6  road in plain view of everybody as they drive up and come to

7  him?  We're going to point that out and we're going to say he

8  came in with intent to enter free from official restraint.

9          THE COURT:  How are you going to --

10          MR. DAVIS:  You can't tell --

11          THE COURT:  How are you going to prove that one can

12  reapply for asylum?

13          MR. DAVIS:  I'm going to get it from the A-file

14  custodian.

15          THE COURT:  Okay.

16          MR. MCDONALD:  And, Your Honor, I think that would be

17  beyond the scope of the examination of the A-file custodian.

18          THE COURT:  Well, then he can call him as his own

19  witness.  I mean the A-file custodian will say somebody can

20  reapply for asylum?

21          MR. MCDONALD:  I don't -- I don't know exactly what he

22  will say, but, Your Honor, I think --

23          THE COURT:  I'll -- I'm going to change the ruling.

24  I'll permit you to prove that he applied previously for asylum

25  and it was turned down, and I'll permit you to prove through

ER-433

```
1    the A-file custodian that one can reapply for asylum.  And you
2    can argue the circumstances, the physical circumstances, in
3    evidence pertaining to this defendant, that he came in, sat
4    down by the fence, and waited.  And you can argue that.
5            I'm not going to allow the woman to testify about what
6    others have done or what the condition on the ground was.  So
7    that's the ruling.
8            MR. DAVIS:  I've given up on what others have done,
9    Your Honor.  You know --
10           THE COURT:  Yeah.  Otherwise --
11           MR. DAVIS:  I'm not going to --
12           THE COURT:  Otherwise, she doesn't provide anything
13   that's relevant, as far as I'm concerned, to this.  So that's
14   my ruling.  I don't want to belabor it.
15           She may not testify.  I will permit you to prove that
16   he had previously applied for asylum and that one can reapply.
17   And, you know, maybe that's relevant to the -- the physical
18   circumstances of him sitting down by the fence and remaining
19   there.
20           MR. DAVIS:  Is the Court precluding all testimony
21   about the situation in Tijuana in November of 2019, about the
22   thousands of people waiting to come in and the long line at the
23   border?  Because I can inquire that of the A-file custodian as
24   well.
25           THE COURT:  Yeah, okay, I'll let you do that way.
```

ER-434

```
1          MR. MCDONALD:  Your Honor, I have an additional issue
2   with the asylum claim from previously, and it is this:  That
3   when he made that asylum application, it was actually after he
4   had illegally entered the United States, and he pled guilty to
5   illegally entering the United States and was in custody at the
6   time that those credible fear claims --
7          THE COURT:  I assume all of this can be elicited from
8   the A-file custodian, right?
9          MR. DAVIS:  I think that all goes to weight, Your
10  Honor.
11         THE COURT:  I do too.
12         You can -- I'm not foreclosing you from proving any of
13  that.  But I think there is a -- you know, there's a thread of
14  relevancy to the fact that one can reapply, this fellow has
15  applied before, and then you look at his conduct, you can say,
16  well, that might have been his motive, and even though, you
17  know, he disclaimed that, he didn't say anything about it at
18  the time.  But that's how it shapes up.
19         The -- the lawyer, with all respect to her, I don't
20  find has any relevant testimony to this case.  And as you say,
21  Mr. Davis, you can inquire of the agent what the circumstances
22  on the ground were at the time that he entered and that there
23  was a big pileup of people trying to get asylum.
24         I'll let you do that.
25         MR. DAVIS:  Thank you, Your Honor.  And as to the
```

ER-435

1  asylum application, just to let the Court know, I'm not going

2  to inquire about any of the merits or the facts of what he was

3  claiming or anything like that.

4        THE COURT:  Right.  Okay.  That's fine.

5        MR. DAVIS:  I'm just going to go the fact that he

6  applied --

7        THE COURT:  So those -- those are the parameters then.

8  You can call her off.

9        Okay.  Anything else?

10        MR. MCDONALD:  Your Honor, with regard to the asylum

11  application, would the United States be permitted to get into

12  the substance of it to show that --

13        THE COURT:  Why?  I mean the only relevance is he's

14  saying that this fellow applied before and one is not

15  foreclosed from reapplying, and if you look at this guy's

16  behavior, it looks like that's what he wanted to do because he

17  sat down.  He didn't try to make a run for it.  He didn't try

18  to get over the second fence.  Those are fair inferences, and I

19  don't want to completely deprive him of a defense.

20        He's -- he's right, you know, there's some relevance

21  to that.  The woman, no, she doesn't have any historical

22  connection.  She knows -- doesn't know this fellow, doesn't

23  know what his motives were.  So I'm not going to allow

24  testimony that the word was that if you jump over the fence --

25  the word from whom?

ER-436

1          MR. MCDONALD:  Your Honor, my -- my concern is that

2   the jury will hear El Salvador and asylum request and really

3   run away with their own imagination in terms of what that looks

4   like.

5          THE COURT:  You're going to be able to prove that his

6   -- whatever his claims were, without regard to specificity,

7   that he presented them and an immigration judge said, no, and

8   he was legally put out.

9          That's all we need to know.  We don't need to get into

10  the weeds on this.  Look, that's it.  We've thrashed this

11  around.  Those are my rulings on this.

12         Tomorrow at 9:00 I'll see you downstairs.

13         MR. DAVIS:  So -- okay.  So tomorrow we're meeting

14  downstairs in the jury lounge.

15         THE COURT:  In the jury assembly room.

16         MR. DAVIS:  At 9?

17         THE COURT:  Yeah, at 9.  Be ready to go.  We'll pick a

18  jury.  And how many witnesses do you have?

19         MR. MCDONALD:  Four.

20         THE COURT:  Okay.  So your evidence, if you intend to

21  present affirmative evidence, I don't know, maybe Mr. McDonald

22  will let you handle this asylum thing while the witness is on.

23  Otherwise, you can recall him, put him on as your

24  case-in-chief.  But be ready to go in the afternoon.

25         MR. DAVIS:  We will.

ER-437

63

```
1              THE COURT:  My experience is, around 2:30 or so, we're
2    usually ready to go with the defense, which means you'll also
3    have to argue -- which means we'll probably take up jury
4    instructions over the noon hour.
5              MR. DAVIS:  Yes, Your Honor.  I have mine ready to
6    file.  I just haven't filed them yet.  I'll file them tonight.
7              THE COURT:  File them.  File them.
8              MR. DAVIS:  There won't -- there's only one or two.
9    They're not going to be very different from the normal ones.
10             THE COURT:  All right.  See you tomorrow morning.
11       (The proceedings concluded at 4:55 p.m., June 7, 2021.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

ER-438

1  **Benjamin P. Davis**
   California Bar No. 275918
2  **Salil Dudani**
   California State Bar No. 330244
3  **Federal Defenders of San Diego, Inc.**
4  225 Broadway, Suite 900
   San Diego, California 92101-5008
5  Telephone: (619) 234-8467
   Benjamin_Davis@fd.org
6  Salil_Dudani@fd.org
7
8  Attorneys for Mr. Juan Carlos Cabrera
9
              UNITED STATES DISTRICT COURT
10
             SOUTHERN DISTRICT OF CALIFORNIA
11
              (HONORABLE LARRY A. BURNS)
12

13  **United States of America,**          ) <u>Case No</u>: 20cr-0435-LAB
14                                          )
                        Plaintiff,          ) **Mr. Cabrera's Proposed Jury**
15            vs.                           ) **Instructions**
                                            )
16                                          )
17  **Juan Carlos Cabrera,**                )
                                            )
18                   Defendant.             )
19  ─────────────────────────────────────────────────────────

20                            **I.**

21                       <u>Introduction</u>

22          Mr. Cabrera hereby submits his proposed non-standard jury instructions,

23  although he reserves the ability to supplement them as necessary based on the

24  evidence at trial.

25

26

## II.

### Proposed Modified Instructions

Mr. Cabrera proposes the following additional instructions. Some are slightly modified Ninth Circuit model instructions; others are sourced in case law or in use in other jurisdictions.

1. Circumstantial evidence  *CALCRIM 224 (2017)*
2. Elements of the offense  *Ninth Cir. Jury Instr. 9.7 (as modified)*
3. "Intent to enter free from official restraint"
4. Defendant has testified – with a felony conviction

## Defendant's Proposed Instruction No. 1

### Circumstantial Evidence: Sufficiency of the Evidence

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is indirect evidence, that is, it is proof of one or more facts from which one can find another fact.

You are to consider both direct and circumstantial evidence. Either can be used to prove any fact. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the government has proved each fact essential to that conclusion beyond a reasonable doubt.

Also, before you may rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant is guilty. If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions points to innocence and another to guilt, you must accept the one that points to innocence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable.

### Authority

9th Cir. Jury Instr. 1.5, 3.8 (modified); Judicial Council of California Criminal Jury Instructions, CALCRIM 224 (2017 edition)

ER-441

1

2

## Defendant's Proposed Instruction No. 2

### Elements of the Offense – Count 1 (8 U.S.C. § 1325)

The defendant is charged in the information with being an alien who attempted reentry into the United States in violation of Section 1325(a)(1) of Title 8 of the United States Code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

**First,** the defendant was an alien at the time of the defendant's attempted entry into the United States;

**Second,** the defendant had the specific intent to enter the United States at a time and place other than as designated by immigration officers;

**Third,** the defendant had the specific intent to enter the United States free from official restraint;

**Fourth,** the defendant did something that was a substantial step toward committing the crime and that strongly corroborated the defendant's intent to commit the crime; and

**Fifth,** the defendant committed the offense after having been convicted of a prior offense under Section 1325 of Title 8 of the United States Code.

Mere preparation is not a substantial step toward committing the crime. To constitute a substantial step, a defendant's act or actions must unequivocally demonstrate that the crime will take place unless interrupted by independent circumstances.

Jurors do not need to agree unanimously as to which particular act or actions constituted a substantial step toward the commission of a crime.

An alien is a person who is not a natural-born or naturalized citizen of the United States.

**<u>Defendant's Proposed Instruction No. 3</u>**

**Elements of the Offense – Count 2 (8 U.S.C. § 1326)**

The defendant is charged in the information with being an alien who, after removal, attempted reentry into the United States in violation of Section 1326(a) of Title 8 of the United States Code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

**First,** the defendant was removed from the United States;

**Second,** the defendant had the specific intent to enter the United States free from official restraint;

**Third,** the defendant was an alien at the time of the defendant's attempted reentry into the United States;

**Fourth,** the defendant had not obtained the consent of the Attorney General or the Secretary of the Department of Homeland Security to reapply for admission into the United States; and

**Fifth,** the defendant did something that was a substantial step toward committing the crime and that strongly corroborated the defendant's intent to commit the crime.

Mere preparation is not a substantial step toward committing the crime. To constitute a substantial step, a defendant's act or actions must unequivocally demonstrate that the crime will take place unless interrupted by independent circumstances.

Jurors do not need to agree unanimously as to which particular act or actions constituted a substantial step toward the commission of a crime.

An alien is a person who is not a natural-born or naturalized citizen of the United States.

ER-443

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**Source**

Ninth Cir. Model Jury Instr. 9.7 (brackets removed)

**Argument**

The government has asked the Court to alter the Ninth Circuit's model jury instruction on specific intent, and to provide a new instruction of its own devising. *See* Gov. Proposed Jur. Instr., Dkt. No. 69, at 4 (adding language regarding "the defendant's sole intent" to the model instruction and providing an incomplete definition of "the intent to enter free from official restraint"). The Court should decline this invitation and should instruct the jury as the Ninth Circuit has provided. The Ninth Circuit instruction requires that the jury find "the defendant had the specific intent to enter the United States free from official restraint." Ninth Cir. Model Jur. Instr. 9.7. These instructions were last approved by the Ninth Circuit in April of 2019, well after *United States v. Argueta-Rosales*, 819 F.3d 1149 (9th Cir. 2016), which the government cites in support of its argument.

The model instruction is clear, sufficient, and will not mislead the jury. The question before the jury is simple: has the government proven that Mr. Cabrera possessed the requisite intent when he entered the United States? If the answer is yes, the jury will convict; if no, they will acquit. The presence or absence of specific intent is a binary proposition: Mr. Cabrera either had it or he didn't. Tinkering with the Ninth Circuit's language in order to give the prosecution's theory of the case—that Mr. Cabrera had more than one intent when he entered the United States—the imprimatur of the Court's endorsement puts the thumb on the scale for the government. The government is free to argue in closing any evidence it can muster

ER-444

that Mr. Cabrera did have the specific intent to enter free from official restraint, and that it doesn't have to negate other possible mental states he may have had. But the instruction itself is quite clear, and the Court should resist the government's attempts to alter it.

**Defendant's Proposed Instruction No. 3**

**"Intent to Enter Free From Official Restraint"**

A person has the intent to enter the United States free from official restraint only if he has the intent to enter the United States without being detected, apprehended, or prevented from going at large within the United States and mixing with the population.

A person is not free from official restraint when he is in an area that is subject to constant government surveillance.

**Authority**

*United States v. Castillo-Mendez*, 868 F.3d 830, 839 (9th Cir. 2017);

*United States v. Vasquez-Hernandez*, 849 F.3d 1219, 1227 (9th Cir. 2017)

ER-446

**Defendant's Proposed Jury Instruction No. 5**

**Theory of Defense**

Mr. Cabrera's theory of defense is that he did not have the specific intent to enter the United States free from official restraint, and that he instead intended to be arrested by Border Patrol and taken into custody so that he could apply to seek protection in the United States from returning to El Salvador.

Unless you find that the government has proven beyond a reasonable doubt that Mr. Cabrera had the specific intent to enter the United States free from official restraint – that is, that he intended to enter the United States without being detected, apprehended, or prevented from going at large within the United States and mixing with the population – you must find him not guilty.

ER-447

# V.

## Conclusion

For these reasons, Mr. Cabrera asks the Court to give these proposed instructions.


Dated:          June 7, 2021                    Respectfully submitted,

                                                /s/ *Benjamin P. Davis*
                                                **Benjamin P. Davis**
                                                **Salil Dudani**
                                                Federal Defenders of San Diego, Inc.
                                                Attorneys for Mr. Cabrera

ER-448

RANDY S. GROSSMAN
Acting United States Attorney
COLIN M. MCDONALD, CBN 286561
Assistant United States Attorney
AMANDA T. MUSKAT, CBN 312825
Assistant United States Attorney
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-9144
colin.mcdonald@usdoj.gov

Attorneys for Plaintiff
United States of America

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 20-CR-00435-LAB |
| Plaintiff, | **UNITED STATES' PROPOSED JURY INTRUCTIONS** |
| v. | Trial Date: June 8, 2021 |
| JUAN CARLOS CABRERA, | Time: 9:00 a.m. |
| Defendant. | Courtroom: 14A, Carter/Keep |
| | Hon. Larry Alan Burns |

The United States, through its counsel, hereby submits its proposed jury instructions. Pursuant to this Court's standing order in criminal cases, these proposed instructions comprise instructions listing the elements of the charged offenses, and the United States' proposed non-standard instructions.

DATED: June 1, 2020      Respectfully Submitted,

RANDY S. GROSSMAN
Acting United States Attorney

*s/Colin M. McDonald*
Colin M. McDonald
Assistant United States Attorney

# ER-449

20CR00435-LAB

## PROPOSED INSTRUCTION FOR COUNT 1

The defendant is charged in Count 1 of the indictment with being an alien who attempted entry into the United States at a time or place other than as designated by immigration officers, in violation of Section 1325(a)(1) of Title 8 of the United States Code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt.

First, the defendant was an alien at the time of his attempted entry into the United States;

Second, the defendant had the specific intent to enter the United States at a time or place other than as designated by immigration officers;

Third, the defendant had the specific intent to enter the United States free from official restraint, meaning Defendant intended to enter the United States without being apprehended or prevented from going at large within the United States.

Fourth, the defendant did something that was a substantial step toward committing the crime and that strongly corroborated the defendant's intent to commit the crime; and

Fifth, the defendant committed the offense after being convicted of a prior illegal-entry offense under Section 1325 of Title 8 of the United States Code.


An alien is a person who is not a natural-born or naturalized citizen of the United States.

A "place other than as designated by immigration officers" refers to any place other than immigration facilities at designated ports of entry.

The government does not need to prove that entry free from official restraint was the defendant's sole intent. Rather, the United States must prove only that the

20CR00435-LAB

defendant had a specific intent to enter the United States free from official restraint, not that this was his only purpose.

Mere preparation is not a substantial step toward committing the crime. To constitute a substantial step, a defendant's act or actions must unequivocally demonstrate that the crime will take place unless interrupted by independent circumstances.

- 9th Cir. Model Instruction 9.7 (Alien—Deported Alien Reentering United States Without Consent) (modifying attempted reentry instruction for attempted entry crime, by removing deportation and consent to reapply elements and adding time or place element).

- *United States v. Aldana*, 878 F.3d 877, 882 (9th Cir. 2017) ("Reading § 1325(a)(1) and § 235.1 together, we interpret the phrase a 'place other than as designated by immigration officers' in § 1325(a)(1) as referring to any place other than immigration facilities at designated ports of entry, as contemplated by § 235.1(a).").

- *United States v. Castillo-Mendez*, 868 F.3d 830, 836 (9th Cir. 2017) ("Should the jury again ask for the definition of official restraint," in a 1326 attempt prosecution, "the district court should remind the jury that official restraint is relevant only as a part of the defendant's requisite mens rea, and answer with a definition drawn from attempted illegal reentry cases, such as 'you must find that the defendant had the specific intent to enter free from official restraint, which means intent to enter without being detected, apprehended, or prevented from going at large within the United States and mixing with the population.'").

- *United States v. Argueta-Rosales*, 819 F.3d 1149, 1157 (9th Cir. 2016) ("That being said, we also clarify that the government need not prove that entry free from official restraint was the defendant's *sole* intent. The government must prove only that Argueta had *a* specific intent to enter the United States free from official restraint, not that this was his only purpose.") (emphases in original).

ER-451

PROPOSED INSTRUCTION FOR COUNT 2

The defendant is charged in Count 2 of the indictment with being an alien who, after removal or deportation, attempted reentry into the United States, in violation of Section 1326(a) of Title 8 of the United States Code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant was removed or deported from the United States;

Second, the defendant had the specific intent to enter the United States free from official restraint, meaning Defendant intended to enter the United States without being apprehended or prevented from going at large within the United States;

Third, the defendant was an alien at the time of the defendant's attempted reentry into the United States;

Fourth, the defendant had not obtained the consent of the Attorney General or the Secretary of the Department of Homeland Security to reapply for admission into the United States; and

Fifth, the defendant did something that was a substantial step toward committing the crime and that strongly corroborated the defendant's intent to commit the crime.

An alien is a person who is not a natural-born or naturalized citizen of the United States.

The government does not need to prove that entry free from official restraint was the defendant's sole intent. Rather, the United States must prove only that the defendant had a specific intent to enter the United States free from official restraint, not that this was his only purpose.

Mere preparation is not a substantial step toward committing the crime. To constitute a substantial step, a defendant's act or actions must unequivocally

ER-452

20CR00435-LAB

demonstrate that the crime will take place unless interrupted by independent circumstances.

Jurors do not need to agree unanimously as to which particular act or actions constituted a substantial step toward the commission of a crime.

- 9th Cir. Model Instruction 9.7 (Alien—Deported Alien Reentering United States Without Consent)

- *United States v. Aldana*, 878 F.3d 877, 882 (9th Cir. 2017) ("Reading § 1325(a)(1) and § 235.1 together, we interpret the phrase a 'place other than as designated by immigration officers' in § 1325(a)(1) as referring to any place other than immigration facilities at designated ports of entry, as contemplated by § 235.1(a).").

- *United States v. Castillo-Mendez*, 868 F.3d 830, 836 (9th Cir. 2017) ("Should the jury again ask for the definition of official restraint," in a 1326 attempt prosecution, "the district court should remind the jury that official restraint is relevant only as a part of the defendant's requisite mens rea, and answer with a definition drawn from attempted illegal reentry cases, such as 'you must find that the defendant had the specific intent to enter free from official restraint, which means intent to enter without being detected, apprehended, or prevented from going at large within the United States and mixing with the population.'").

- *United States v. Argueta-Rosales*, 819 F.3d 1149, 1157 (9th Cir. 2016) ("That being said, we also clarify that the government need not prove that entry free from official restraint was the defendant's *sole* intent. The government must prove only that Argueta had *a* specific intent to enter the United States free from official restraint, not that this was his only purpose.") (emphases in original).

ER-453

JURY INSTRUCTION NO. ____

You [have heard] [are about to hear] testimony from Leah Hogue, who [testified] [will testify] will testify to opinions and the reasons for her opinions. This opinion testimony is allowed because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

- Ninth Circuit Model Criminal Jury Instructions 4.14 – Opinion Evidence, Expert Witness (2019 ed.).
- Conformed to anticipated fingerprint expert testimony.

ER-454

20CR00435-LAB

**Benjamin P. Davis**
California Bar No. 275918
**Salil Dudani**
California Bar No. 330244
**Federal Defenders of San Diego, Inc.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
Benjamin_Davis@fd.org
Salil_Dudani@fd.org

Attorneys for Mr. Cabrera

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### (HONORABLE LARRY A. BURNS)

| | | |
|---|---|---|
| **United States of America,** | ) | <u>Case No:</u>  20-CR-435-LAB |
| | ) | |
| Plaintiff, | ) | Hon. Larry A. Burns |
| vs. | ) | Date: June 7, 2021 |
| | ) | Time: 2:00 p.m. |
| **Juan Carlos Cabrera,** | ) | |
| | ) | **Notice of Motion and Memorandum** |
| Defendant. | ) | **of Points and Authorities in Support** |
| | ) | **of Mr. Cabrera's Motion to:** |
| | ) | |
| | ) | (1)    Suppress Statements |
| | ) | |

_____

## NOTICE OF MOTION

Juan Carlos Cabrera, by and through counsel, respectfully asks this Court to grant the below motion to suppress statements.

//

//

ER-455

## I.      Statement of Facts

According to Border Patrol Agent Cisneros's Memorandum of Investigation, *see* Exhibit A, Mr. Cabrera was arrested on the morning of November 4, 2019, about 50 yards north of the U.S./Mexico border. After being notified by a video surveillance operator of Mr. Cabrera's presence at the "secondary fence" inside the United States, Agent Cisneros went to the area in his Border Patrol vehicle.

Agent Cisneros's arrival was captured on video surveillance *See* Exhibit B (video) at 8:40-9:10. Mr. Cabrera is seated right next to the secondary fence, on a road. Agent Cisneros drives up the road and parks the car feet from Mr. Cabrera and parallel to the secondary fence, in effect trapping Mr. Cabrera between the secondary fence and the Border Patrol vehicle. Agent Cisneros exits the vehicle and leaves the driver's side door open, which door appears very close to Mr. Cabrera, who is still seated. Agent Cisneros stands right next to him and looks down towards him while Mr. Cabrera remains seated. *See id.* at 9:11-11:26. In this position, Mr. Cabrera is boxed in by the fence, Agent Cisneros, and the agent's car. A second vehicle, presumably also Border Patrol's, arrives on the other side of the secondary fence and stops next to Mr. Cabrera and Agent Cisneros for about a minute before driving off. *Id.* at 9:20-10:00. After about two minutes, Mr. Cabrera gets up, and Agent Cisneros puts him in the vehicle; he appears to handcuff Mr. Cabrera before doing so. *Id.* at 11:26.

According to the Memorandum of Investigation, Ex. A, Agent Cisneros had the following exchange with Mr. Cabrera after he arrived on scene: Agent Cisneros identified himself as a Border Patrol agent in Spanish, then conducted an immigration inspection in Spanish. Mr. Cabrera stated he is a citizen of El Salvador. Agent Cisneros asked if he had immigration documents allowing entry to the U.S., and he said no. Agent Cisneros then asked how he entered the U.S., and he said he climbed over the border fence a few minutes prior. Finally, Mr. Cabrera allegedly stated that "his sole purpose

for illegally entering the United States in this manner was because he left El Salvador to find work for him."

The entire encounter took place in the 50-yard space between the border fence and the secondary fence, where the public is generally not authorized to enter. *See* Exhibit C (Google Earth image, with arrest coordiantes); Exhibit D (still image of the arrest area provided in discovery, showing the secondary fence constructed after the Google Earth image was taken).

## II.    Argument

Mr. Cabrera's alleged field statements should be suppressed for two reasons. First, Agent Cisneros subjected him to custodial interrogation without the advisals required by *Miranda v. Arizona*, 384 U.S. 436 (1966). Second, Mr. Cabrera's statements were involuntary. Both grounds independently justify suppression.

### A. The field statements must be suppressed under *Miranda v. Arizona*.

The Court should suppress any statements that the arresting agent purportedly obtained from Mr. Cabrera in conjunction with his arrest. When individuals are subjected to custodial interrogation, they are entitled to procedural safeguards to ensure that they are not compelled to be witnesses against themselves. *See Allen v. Roe*, 305 F.3d 1046, 1050 (9th Cir. 2002); U.S. CONST. AMEND. V. Specifically, people are entitled to Miranda warnings "whenever a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

Whether Mr. Cabrera was in custody depends on "whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *California v. Beheler*, 463 U.S. 1121 1125 (1983)). A person need not be in a police station to be in custody for purposes of *Miranda*. *See Orozco v. Texas*, 394 U.S. 324, 326–27 (1969). The

Ninth Circuit utilizes an objective reasonable person test to determine whether a person is in custody:

> In this circuit an objective reasonable man test is employed in determining whether a person is in custody. The factors to be considered are the language used to summon him, the physical surroundings of the interrogation, the extent to which he is confronted with evidence of his guilt, and pressure exerted to detain him. If the person reasonably believes that he cannot leave freely, he is considered in custody and a *Miranda* warning is required.

*United States v. Luther*, 521 F.2d 408, 410 (9th Cir. 1975). Thus, if a reasonable person in the defendant's position would have felt he was not free to leave, the defendant was is custody.

Here, no reasonable person in Mr. Cabrera's position would have felt free to leave. The "physical surroundings of the interrogation" are telling. *Id.* Mr. Cabrera was hemmed in between the secondary fence and Agent Cisneros's vehicle. *See* Ex. B-C. Right next to Mr. Cabrera on one side was the secondary fence; on the other, the Border Patrol vehicle. And Agent Cisneros himself blocked off another side, standing over Mr. Cabrera, right next to him, while Mr. Cabrera was seated. Although the discovery does not specify, Agent Cisneros was presumably armed during this encounter. Moreover, the encounter occurred in between the two fences—a zone policed by Border Patrol that is not generally open to the public. It would have been unreasonable for Mr. Cabrera to feel free to leave. For all these reasons, he was in custody when questioned.

That Mr. Cabrera was subjected to questioning is clear. Agent Cisneros's report states that he conducted an "immigration inspection" that involved asking Mr. Cabrera questions about his citizenship and entry—in other words, "express questioning." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). Routine booking questions do not necessarily require that *Miranda* warnings be given. *See generally Pennsylvania v. Muniz*, 496 U.S. 582 (1980). Such questions may include information such as identity, nicknames, age, and address. *United States v. Washington*, 462 F.3d

1124, 1132 (9th Cir. 2006). But such questions *do* require *Miranda* warnings if they would cause an accused to make inculpatory statements. *See United States v. Foster*, 227 F.3d 1096, 1103 (9th Cir. 2000); *see also Pennsylvania v. Muniz*, 496 U.S. 582, 602 n.14 (1990) ("police may not ask questions, even during booking, that are designed to elicit incriminatory admissions") (internal citation omitted).

As a threshold matter, Agent Cisneros's questioning as to *why* Mr. Cabrera entered the U.S. is not, substantively, a booking question. But the exception does not apply to the other questions, either. Agent Cisneros's questions about Mr. Cabrera's citizenship and immigration status were precisely designed to elicit incriminating responses for the offense charged—attempted illegal entry by an alien. Questions rise to the level of interrogation requiring *Miranda* warnings if the questioning officer "should know [the questions] are reasonably likely to elicit an incriminating response." *Innis*, 447 U.S. at 391. This is assessed by looking at "all the circumstances involved in a given case," *United States v. Booth*, 669 F. 2d 1231, 1237 (9th Cir. 1981)—that is, the "particular situation," *United States v. Mata-Abundiz*, 717 F.2d 1277, 1280 (9th Cir. 1983), including "both the questions and the context." *United States v. Zapien*, 861 F.3d 971, 975 (9th Cir. 2017) (citation omitted). Here, the exchange took place in between the two border fences, and the questions about Mr. Cabrera's citizenship, immigration status, and entry directly related to the elements of the crime charged. Given these "questions and the context," *id.*, it would have been obvious to Agent Cisneros that the questions were reasonably likely to elicit an incriminating response. The fact that "[t]he questioning here did not arise in a routine 'booking' setting" further supports this conclusion. *United States v. Disla*, 805 F.2d 1340, 1347 (9th Cir. 1986) (citation omitted).

The arresting agent did not provide any *Miranda* warning prior to asking these questions at the time of arrest. Because the field statements were thus the result of un-warned custodial interrogation, they must be suppressed.

# Exhibit A

Event No:IMB2011000019

U.S. Department of Homeland Security | MEMORANDUM OF INVESTIGATION

| File Number | Title: | Control Office |
|---|---|---|
| A076 490 689 | CABRERA, JUAN CARLOS | SDC/IMB |

Memorandum of Investigation
---------------------------

On November 4, 2019, at approximately 6:48a.m., I, Border Patrol Agent Joseph Cisneros, was conducting linewatch operations in the Imperial Beach Border Patrol area of operations in an area known to Border Patrol Agents as "Whiskey 15." This area is approximately 50 yards north of the U.S./Mexico International Boundary fence and five miles west of the San Ysidro, California Port of Entry. At approximately 6:50 a.m., I was notified by the Remote Video Surveillance system operator, via service radio, of a subject that was in between the United States/Mexico International Boundary fence and the secondary fence. It was stated by the system operator they he had begun to go north towards the secondary fence. The operator described him as being a single male subject. This area is also used regularly by aliens trying to further their illegal entry into the United States. I responded to the area in my assigned government vehicle, and I drove to his location. I identified myself as a United States Border Patrol Agent in the Spanish language. I proceeded to conduct an immigration inspection on the adult male, later identified as CABRERA, Juan, in the Spanish language. CABRERA stated that he is a citizen of El Salvador. I then asked him if he had any immigration documents in his possession which would allow him to enter or remain in the United States legally. CABRERA replied, "No." I then asked how he entered the United States. CABRERA stated to me that he illegally entered the United States by climbing over the U.S./Mexico International Boundary fence a few minutes earlier today. CABRERA stated to me that his sole purpose for illegally entering the United States in this manner was because he left El Salvador to find work for him. I searched CABRERA for any immigration documents in his possession which would allow him to enter or remain in the United States legally and found none.

I arrested CABRERA-Juan at approximately 7:00 a.m. and arranged to have him transported to the Imperial Beach Border Patrol Station for processing.

| Investigator | | Date |
|---|---|---|
| Border Patrol Agent | JOSEPH CISNEROS | November 04, 2019 |

Form G-166C (08/01/07)

ER-461

Page 1 of 1

0008

# Exhibit C

Arrest Site

Legend
32.53509, -117.12023



32.53509, -117.12023

Google Earth

©2021 Google
©2021 INEGI

ER-463

60 ft

# Exhibit D



ER-465

000330

AO 245B (CASDRev. 08/13) Judgment in a Criminal Case for Revocations

FILED

JAN 2 9 2018

CLERK U S DISTRICT COURT
SOUTHERN DISTRICT CALIFORNIA

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA

**v.**

JUAN CARLOS CABRERA

**JUDGMENT IN A CRIMINAL CASE**
(For Revocation of Probation or Supervised Release)
(For Offenses Committed On or After November 1, 1987)

Case Number:   15CR0353-L

BENJAMIN DAVIS, FEDERAL DEFENDERS OF SAN DIEGO, INC
Defendant's Attorney

**REGISTRATION NO.**   26618038

☐ -

THE DEFENDANT:

☒ admitted guilt to violation of allegation(s) No.     ONE (1)

☐ was found guilty in violation of allegation(s) No.   _____ after denial of guilty.

**Accordingly,** the court has adjudicated that the defendant is guilty of the following allegation(s):

| Allegation Number | Nature of Violation |
|---|---|
| 1 | nv35, Illegal entry into United States |

Supervised Release is revoked and the defendant is sentenced as provided in page 2 through 4 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

   IT IS ORDERED that the defendant shall notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States attorney of any material change in the defendant's economic circumstances.

January 29, 2018
Date of Imposition of Sentence

HON. M. James Lorenz
UNITED STATES DISTRICT JUDGE

15CR0353-L

ER-466

AO 245B (CASD Rev. 08/13) Judgment in a Criminal Case for Revocations

| | | |
|---|---|---|
| DEFENDANT: | JUAN CARLOS CABRERA | Judgment - Page **2** of **4** |
| CASE NUMBER: | 15CR0353-L | |

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of:
TIME SERVED

☐    Sentence imposed pursuant to Title 8 USC Section 1326(b).
☐    The court makes the following recommendations to the Bureau of Prisons:

☐    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:

    ☐  at  _____ A.M.     on  _____

    ☐  as notified by the United States Marshal.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐  on or before

    ☐  as notified by the United States Marshal.

    ☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on  _____ to  _____

at  _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By  _____
DEPUTY UNITED STATES MARSHAL

# ER-467

15CR0353-L

AO 245B (CASD Rev. 08/13) Judgment in a Criminal Case for Revocations

| | |
|---|---|
| DEFENDANT: JUAN CARLOS CABRERA | Judgment - Page 3 of 4 |
| CASE NUMBER: 15CR0353-L | |

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of:
TWO (2) YEARS

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons unless removed from the United States.

The defendant shall not commit another federal, state or local crime.

*For offenses committed on or after September 13, 1994:*

The defendant shall not illegally possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter as determined by the court. Testing requirements will not exceed submission of more than 4 drug tests per month during the term of supervision, unless otherwise ordered by court.

- ☐ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (*Check, if applicable.*)
- ☒ The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.
- ☒ The defendant shall cooperate in the collection of a DNA sample from the defendant, pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000, pursuant to 18 USC section 3583(a)(7) and 3583(d).
- ☐ The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. (*Check if applicable.*)
- ☐ The defendant shall participate in an approved program for domestic violence. (*Check if applicable.*)

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court. The defendant shall also comply with any special conditions imposed.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

# ER-468

15CR0353-L

AO 245B (CASD Rev. 08/13) Judgment in a Criminal Case for Revocations

| | | |
|---|---|---|
| DEFENDANT: | JUAN CARLOS CABRERA | Judgment - Page 4 of 4 |
| CASE NUMBER: | 15CR0353-L | |

## SPECIAL CONDITIONS OF SUPERVISION

1) If deported, excluded or allowed to voluntarily return to country of origin, not reenter the United States illegally and report to the probation officer within 24 hours of any reentry to the United States; supervision waived upon deportation, exclusion, or voluntary departure.

//

# ER-469

15CR0353-L

**Benjamin P. Davis**
California Bar No. 275918
**Federal Defenders of San Diego, Inc.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
benjamin_davis@fd.org
_____Retained   _X_   Appointed

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

Trial Judge:  Honorable Larry A. Burns        Court Reporter: Cynthia Ott

| | | |
|---|---|---|
| **United States of America,** | ) | <u>Case No.</u>:  20CR0435-LAB |
| | ) | |
| (Appellee) Plaintiff, | ) | |
| | ) | **Notice of Appeal (Criminal)** |
| vs. | ) | |
| | ) | |
| **Juan Carlos Cabrera,** | ) | |
| | ) | |
| (Appellant) Defendant. | ) | |

Notice is hereby given that **<u>Juan Carlos Cabrera</u>**, Appellant-Defendant above-named, hereby appeals to the United States Court of Appeals for the Ninth Circuit from the

( **x** ) final judgment (F. R. Crim. P. 32(b))

(  ) sentence only (18 U.S.C. § 3742) Sentence imposed _____.

(  ) order (describe):

the last of which was entered in this proceeding on the <u>15th</u> day of <u>November</u> 2021.

If government appeal:  Was the filing of this appeal approved in accordance with 18 U.S.C. § 3742(b)(4)? ___Yes_____ No

<u>Dated</u>:  November 16, 2021                    ***s/ Benjamin P. Davis***
                                                                Signature*

# ER-470

Transcripts Required**__**x**__Yes ____No     Date Ordered or to be ordered: <u>11/19/2021</u>


Date     ( x ) Indictment     (   ) Information     Filed <u>02/06/2020</u>


Bail Status ____<u>in custody</u>____


Will there be a request to expedite the appeal and set a schedule faster than that normally set?
_____Yes__**x**__No   (Note: This does not alleviate requirement of <u>FRAP 27-12</u> a motion to expedite which must be done in accordance with FRAP 27).
_____
 *Pursuant to Fed. R. Crim. P. 32(a)(2) the defendant may request the clerk to prepare and file the Notice of Appeal.

**If transcript required, transcript order form (CA9-036 must be completed and court reporter contacted to make arrangements for transcription.

APPEAL,RELATED,SEALDC,TRIAL

# U.S. District Court
## Southern District of California (San Diego)
## CRIMINAL DOCKET FOR CASE #: 3:20−cr−00435−LAB−1

Case title: USA v. Cabrera                     Date Filed: 02/06/2020

Assigned to: Chief Judge Larry
Alan Burns

Appeals court case number:
21−50259 USCA

### Defendant (1)

**Juan Carlos Cabrera**     represented by     **Federal Defenders**
Federal Defenders of San Diego
225 Broadway
Suite 900
San Diego, CA 92101−5008
(619)234−8467
Fax: (619)687−2666
Email: cassd_ecf@fd.org
*TERMINATED: 02/11/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community*
*Defender Appointment*

**Benjamin P. Davis**
Federal Defenders of San Diego, Inc.
225 Broadway
Suite 900
San Diego, CA 92101
(619) 234−8467
Fax: (619) 687−2666
Email: Benjamin_Davis@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community*
*Defender Appointment*

**Salil Dudani**
Federal Defenders of San Diego
225 Broadway
Suite 900
San Diego, CA 92101−5008
619−234−8467
Fax: 619−687−2666
Email: salil_dudani@fd.org
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community*
*Defender Appointment*

| **Pending Counts** | **Disposition** |
| --- | --- |
| 8:1325(a)(1) − Attempted Unlawful Entry by an Alien (Felony) (1) | Bureau of Prisons for 24 months to run concurrent to count 2, no supervised release, no fine, assessment $100.00 − waived |
| 8:1326(a),(b) − Attempted Reentry of Removed Alien | Bureau of Prisons for 51 months to run concurrent to count 1, supervised release 3 years, no fine, |

ER-472

(2)                                             assessment $100.00 – waived

**Highest Offense Level
(Opening)**
Felony

**Terminated Counts**                          **Disposition**
None

**Highest Offense Level
(Terminated)**
None

**Complaints**                                 **Disposition**
None

---

**Plaintiff**

USA                              represented by    **U S Attorney CR**
                                                  U S Attorneys Office Southern District of
                                                  California
                                                  Criminal Division
                                                  880 Front Street
                                                  Room 6293
                                                  San Diego, CA 92101
                                                  (619)557–5610
                                                  Fax: (619)557–5917
                                                  Email: Efile.dkt.gc2@usdoj.gov
                                                  *TERMINATED: 02/12/2020*
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*
                                                  *Designation: Assistant United States
                                                  Attorney*

                                                  **Adam Gordon**
                                                  Department of Justice – U.S. Attorney's
                                                  Office
                                                  880 Front Street
                                                  Room 6293
                                                  San Diego, CA 92101
                                                  619–546–6720
                                                  Fax: 619–546–0510
                                                  Email: adam.gordon@usdoj.gov
                                                  *TERMINATED: 06/02/2021*
                                                  *LEAD ATTORNEY*
                                                  *Designation: Assistant United States
                                                  Attorney*

                                                  **Amanda T. Muskat**
                                                  Office of the United States Attorney
                                                  880 Front Street
                                                  Room 6293
                                                  San Diego, CA 92101
                                                  619–546–6495
                                                  Email: Amanda.Muskat@usdoj.gov
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*
                                                  *Designation: Assistant United States
                                                  Attorney*

ER-473

**Colin M. McDonald**
DOJ – U.S. Attorney's Office
Federal Office Building
880 Front Street
Room 6293
San Diego, CA 92101
619–546–9144
Fax: 619–546–0510
Email: Colin.McDonald@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant United States Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/06/2020 | 1 | INDICTMENT as to Juan Carlos Cabrera (1) count(s) 1, 2. (smd) (sjt). (Entered: 02/06/2020) |
| 02/06/2020 | 2 | NOTICE OF RELATED CASE(S) by USA of case(s) 19cr4872–L. (smd) (Entered: 02/06/2020) |
| 02/06/2020 | 3 | MINUTE ORDER OF JUDGE TRANSFER in case as to Juan Carlos Cabrera. Judge M. James Lorenz is no longer assigned. Case reassigned to Chief Judge Larry Alan Burns for all further proceedings. The new case number is 20CR435–LAB. (no document attached) (sjt) (Entered: 02/06/2020) |
| 02/06/2020 | 4 | Set/Reset Duty Hearings as to Juan Carlos Cabrera: Arraignment set for 2/7/2020 before Magistrate Judge William V. Gallo. (no document attached) (als) (Entered: 02/06/2020) |
| 02/06/2020 | 5 | NOTICE OF HEARING as to Defendant Juan Carlos Cabrera. Arraignment set for 2/7/2020 at 2:00 PM before Magistrate Judge William V. Gallo. (no document attached) (als) (Entered: 02/06/2020) |
| 02/07/2020 | 6 | Minute Entry for proceedings held before Magistrate Judge William V. Gallo: Arraignment on Indictment and Initial Appearance as to Juan Carlos Cabrera (1) Count 1,2 held on 2/7/2020. Not Guilty plea entered. Appointed Attorney Federal Defenders for Juan Carlos Cabrera. Bond set as to Juan Carlos Cabrera (1) $20,000 P/S sec by 2 FRA's with same terms and conditions as related case 19CR4872–LAB. ( Motion Hearing/Trial Setting set for 2/24/2020 02:00 PM before Chief Judge Larry Alan Burns) (Interpreter Nelly Sztuden). (CD# 2/7/2020 WVG 20–1:3:41–3:43). (Plaintiff Attorney Ronald Sou AUSA). (Defendant Attorney Keshav Nair FD–S/A). (aje) (Entered: 02/10/2020) |
| 02/07/2020 | 7 | ***Spanish Interpreter needed as to Juan Carlos Cabrera (no document attached) (aje) (Entered: 02/10/2020) |
| 02/07/2020 | 8 | ORDER Setting Conditions of Release. Bond set for Juan Carlos Cabrera (1) $20,000 P/S. Signed by Magistrate Judge Allison H. Goddard on 11/08/2019. (mme) (Entered: 02/10/2020) |
| 02/11/2020 | 9 | NOTICE OF ATTORNEY APPEARANCE: Benjamin P. Davis appearing for Juan Carlos Cabrera (Davis, Benjamin)Attorney Benjamin P. Davis added to party Juan Carlos Cabrera(pty:dft) (jdt). (Entered: 02/11/2020) |
| 02/12/2020 | 10 | NOTICE OF ATTORNEY APPEARANCE Colin M. McDonald appearing for USA. (McDonald, Colin)Attorney Colin M. McDonald added to party USA(pty:pla) (jdt). (Entered: 02/12/2020) |
| 02/19/2020 | 11 | MOTION to Shorten Time *To File Motions for Fingerprint Exemplars and Reciprocal Discovery* by USA as to Juan Carlos Cabrera. (McDonald, Colin) (jdt). (Entered: 02/19/2020) |
| 02/19/2020 | 12 | MOTION for Fingerprint Exemplars , MOTION for Reciprocal Discovery by USA as to Juan Carlos Cabrera. (McDonald, Colin) (jdt). (Entered: 02/19/2020) |

ER-474

| 02/19/2020 | 13 | MINUTE ORDER by Chief Judge Larry Alan Burns on 2/19/2020; Granting 11 Motion to Shorten Time as to Juan Carlos Cabrera (1). (no document attached) (srm) (Entered: 02/19/2020) |
|---|---|---|
| 02/24/2020 | 14 | Minute Entry for proceedings held before Chief Judge Larry Alan Burns: Motion Hearing/Trial Setting as to Juan Carlos Cabrera held on 2/24/2020. Granting 12 Motion for Fingerprint Exemplars as to Juan Carlos Cabrera (1); Granting 12 Motion for Reciprocal Discovery as to Juan Carlos Cabrera (1); Jury Trial set for 4/7/2020 09:00 AM before Chief Judge Larry Alan Burns. Motion In Limine Hearing set for 4/6/2020 02:00 PM before Chief Judge Larry Alan Burns. (Interpreter Dan DeCoursey). (Court Reporter/ECR James Pence). (Plaintiff Attorney Colin McDonald). (Defendant Attorney Benjamin Davis, FD). (no document attached) (tlw) (Entered: 02/24/2020) |
| 03/11/2020 | 15 | NOTICE OF ATTORNEY APPEARANCE Adam Gordon appearing for USA. (Gordon, Adam)Attorney Adam Gordon added to party USA(pty:pla) (jdt). (Entered: 03/11/2020) |
| 03/13/2020 | 18 | ORDER as to Juan Carlos Cabrera. Signed by Chief Judge Larry Alan Burns on 3/12/2020. (anh) (Entered: 03/18/2020) |
| 03/16/2020 | 16 | MOTION to Dismiss *Count 2 of the Indictment* by Juan Carlos Cabrera. (Attachments: # 1 Memo of Points and Authorities, # 2 Exhibit A–G)(Davis, Benjamin) (jdt). (Entered: 03/16/2020) |
| 03/23/2020 | 19 | MINUTE ORDER by Chief Judge Larry Alan Burns on 3/23/2020 as to Juan Carlos Cabrera: Motion In Limine Hearing set for 4/6/2020 is vacated and continued to 4/16/2020 10:00 AM before Chief Judge Larry Alan Burns. Jury trial setting set for 4/16/2020 at 10:00 AM. Pursuant to Order of the Chief Judge No. 18 filed on March 17, 2020, time is excluded under the Speedy trial Act under 18 U.S.C. § 3161(h)(7)(A) on the grounds that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial (no document attached) (tlw) (Entered: 03/23/2020) |
| 04/02/2020 | 20 | MOTION to Unseal Document *: Government's Ex Parte Application* by Juan Carlos Cabrera. (Attachments: # 1 Memo of Points and Authorities)(Davis, Benjamin) (anh). (Entered: 04/02/2020) |
| 04/02/2020 | 21 | MOTION to Suppress Statements , In Limine MOTION to Preclude Evidence *Under Rule 404(b)*, In Limine MOTION to Exclude Evidence Under Rule 609 , In Limine MOTION to Preclude Testimony *of an Expert*, In Limine MOTION to Exclude Statement *Unless Proven Voluntary*, In Limine MOTION to Admit *Prior Statements*, In Limine MOTION to Preclude *A–File Documents and Testimony*, In Limine MOTION to Exclude Evidence *Not Yet Produced in Discovery*, In Limine MOTION to Exclude *Statements Not Yet Produced in Discovery*, In Limine MOTION for Order *Regarding Form & Conduct of Trial* by Juan Carlos Cabrera. (Attachments: # 1 Memo of Points and Authorities)(Davis, Benjamin) (jdt). (Entered: 04/02/2020) |
| 04/08/2020 | 22 | MINUTE ORDER by Chief Judge Larry Alan Burns as to Juan Carlos Cabrera: Court vacates motion in limine hearing set for 4/16/2020. Time is excluded under the Speedy trial Act under 18 U.S.C. § 3161(h)(7)(A) and 18 U.S.C 3174, on the grounds that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. Status Hearing set for 5/18/2020 02:00 PM before Chief Judge Larry Alan Burns. (no document attached) (tlw) (Entered: 04/08/2020) |
| 05/01/2020 | 23 | RESPONSE in Opposition by USA as to Juan Carlos Cabrera re 16 MOTION to Dismiss *Count 2 of the Indictment* (McDonald, Colin) (jdt). (Entered: 05/01/2020) |
| 05/08/2020 | 24 | Minute Order by Chief Judge Larry Alan Burns on 5/8/2020 as to Juan Carlos Cabrera:Court vacates the Status Hearing set for May 18, 2020 at 2 p.m. and resets the Status Hearing to June 10, 2020 at 10 a.m. Pursuant to Order of Judicial Emergency in the Southern District of California adopted April 2, 2020 suspending Speedy Trial Act limits in the district for one year, time is excluded under the Speedy Trial Act under 18 U.S.C. § 3161(h)(7)(A) on the grounds that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. Any party seeking relief shall file a motion stating cause. (no document attached) (jao) (Entered: 05/08/2020) |

| | | |
|---|---|---|
| 05/11/2020 | 25 | Order Authorizing Video Teleconference as to Juan Carlos Cabrera re 24 . Signed by Chief Judge Larry Alan Burns on 5/11/2020. (jao) (Entered: 05/11/2020) |
| 05/11/2020 | 26 | ORDER AND FINDINGS OF FACT (COVID−19) as to Juan Carlos Cabrera. Signed by Chief Judge Larry Alan Burns on 5/11/2020. (jao) (Entered: 05/11/2020) |
| 06/02/2020 | 27 | NOTICE OF ATTORNEY APPEARANCE: Salil Dudani appearing for Juan Carlos Cabrera *Co−Counsel* (Dudani, Salil)Attorney Salil Dudani added to party Juan Carlos Cabrera(pty:dft) (jdt). (Entered: 06/02/2020) |
| 06/03/2020 | 28 | MOTION for Leave to File *Reply to Government's Response in Opposition to Mr. Cabrera's Motion to Dismiss Count 2 Under § 1326(d)* by Juan Carlos Cabrera. (Attachments: # 1 Exhibit Proposed Reply and Exhibit H)(Davis, Benjamin) (jdt). (Entered: 06/03/2020) |
| 06/04/2020 | 29 | ORDER. The Defendant's Motion for Leave to File a Reply, Dkt. No. 28 , is granted. Defense counsel is directed to e−file the document currently filed as Dkt. No. 28−1 as a new filing under the CM/ECF Criminal event "Reply to Response" to motion. Signed by Chief Judge Larry Alan Burns on 6/4/2020. (jdt) (Entered: 06/04/2020) |
| 06/04/2020 | 30 | REPLY TO RESPONSE to Motion by Juan Carlos Cabrera re 16 MOTION to Dismiss *Count 2 of the Indictment* (Attachments: # 1 Exhibit H)(Davis, Benjamin) (jdt). (Entered: 06/04/2020) |
| 06/09/2020 | 31 | ORDER AUTHORIZING VIDEO TELECONFERENCE as to Juan Carlos Cabrera. Signed by Chief Judge Larry Alan Burns on 6/9/2020. (jdt) (Entered: 06/09/2020) |
| 06/10/2020 | 32 | RESPONSE in Opposition by USA as to Juan Carlos Cabrera re 20 MOTION to Unseal Document *: Government's Ex Parte Application* (McDonald, Colin) (jdt). (Entered: 06/10/2020) |
| 06/10/2020 | 33 | Minute Entry for proceedings held before Chief Judge Larry Alan Burns:Status Hearing re jury trial as to Juan Carlos Cabrera held on 6/10/2020. Motion In Limine Hearing as to Juan Carlos Cabrera held on 6/10/2020. Denying 16 Motion to Dismiss as to Juan Carlos Cabrera (1); denying 20 MOTION to Unseal Document *: Government's Ex Parte Application*; Finding as moot MOTION to Suppress Statements; defer ruling on In Limine MOTION to Preclude Evidence *Under Rule 404(b)*; defer ruling on In Limine MOTION to Exclude Evidence Under Rule 609 ; defer ruling on (need guidelines) In Limine MOTION to Preclude Testimony *of an Expert*; defer ruling on In Limine MOTION to Exclude Statement *Unless Proven Voluntary* (govt to produce video and witness statement); defer ruling on In Limine MOTION to Admit *Prior Statements*; granting in part In Limine MOTION to Preclude *A−File Document and Testimony (warrant of removal approved)(Court reserves on warning document)*; granted In Limine MOTION to Exclude Evidence *Not Yet Produced in Discovery*; granted In Limine MOTION to Exclude *Statements Not Yet Produced in Discovery*; Government's oral motion for leave to file in limine motions – granted. Jury Trial set for 7/21/2020 09:00 AM before Chief Judge Larry Alan Burns. Motion In Limine Hearing set for 7/20/2020 02:00 PM before Chief Judge Larry Alan Burns. (Interpreter Juan Davila−Santiago). (Court Reporter/ECR Cynthia Ott). (Plaintiff Attorney Colin McDonald). (Defendant Attorney Benjamin Davis, FD). (no document attached) (tlw) (Entered: 06/11/2020) |
| 07/01/2020 | 34 | NOTICE *of Fingerprint Expert Testimony* by USA (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit)(Gordon, Adam) (jdt). (Entered: 07/01/2020) |
| 07/13/2020 | 37 | In Limine MOTION to Admit *Certified Documents*, In Limine MOTION to Admit *Videotaped Sworn Statement*, In Limine MOTION to Admit *A−File Documents*, In Limine MOTION to Admit Expert Testimony , In Limine MOTION to Admit Testimony *Regarding Public Records Searches*, In Limine MOTION to Admit Evidence Under Rule 609 , In Limine MOTION to Preclude Evidence *of Duress and Necessity*, In Limine MOTION to Preclude *Evidence Not Previously Produced or Noticed* by USA as to Juan Carlos Cabrera. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(McDonald, Colin) (jdt). (Entered: 07/13/2020) |
| 07/15/2020 | 38 | NOTICE OF CHANGE OF HEARING as to Defendant Juan Carlos Cabrera: On the Court's own motion, jury trial set for 7/21/20 and motion in limine hearing set for 7/20/20 is vacated. Status Hearing re: jury trial set for 7/22/2020 09:00 AM before |

| | | Chief Judge Larry Alan Burns. (no document attached) (tlw) (Entered: 07/15/2020) |
|---|---|---|
| 07/15/2020 | 39 | Order Authorizing Video Teleconference as to Juan Carlos Cabrera re 38 . Signed by Chief Judge Larry Alan Burns on 7/15/2020. (jao) (Entered: 07/15/2020) |
| 07/17/2020 | 40 | NOTICE OF TIME CHANGE ONLY as to Defendant Juan Carlos Cabrera: Status Hearing re: jury trial/motions in limine set for 7/22/2020 will be held at 10:00 AM before Chief Judge Larry Alan Burns. (no document attached) (tlw) (Entered: 07/17/2020) |
| 07/22/2020 | 44 | Minute Entry for proceedings held before Chief Judge Larry Alan Burns: Status Hearing re new dates as to Juan Carlos Cabrera held on 7/22/2020. Motion In Limine Hearing set for 9/21/2020 02:00 PM before Chief Judge Larry Alan Burns. Jury Trial set for 9/22/2020 09:00 AM before Chief Judge Larry Alan Burns. (Interpreter Deborah Berry). (Court Reporter/ECR Cynthia Ott). (Plaintiff Attorney Adam Gordon). (Defendant Attorney Benjamin Davis). (no document attached) (tlw) (Entered: 07/22/2020) |
| 09/15/2020 | 45 | NOTICE OF CHANGE OF HEARING as to Defendant Juan Carlos Cabrera: On the Court's own motion, the Motion In Limine Hearing set for 9/21/20 is vacated and reset for 9/23/2020 09:00 AM before Chief Judge Larry Alan Burns. Trial setting set for 9/23/20 9:00 AM and jury trial set for 9/22/20 is vacated.(no document attached) (tlw) (Entered: 09/15/2020) |
| 09/22/2020 | 49 | ORDER Authorizing Video Teleconference as to Juan Carlos Cabrera re 45 . Signed by Chief Judge Larry Alan Burns on 9/22/2020. (jao) (Entered: 09/22/2020) |
| 09/23/2020 | 50 | Minute Entry for proceedings held before Chief Judge Larry Alan Burns: Motion In Limine Hearing as to Juan Carlos Cabrera held on 9/23/2020 re 43 SEALED MOTION filed by USA – granted. Trial setting status Hearing set for 10/28/2020 09:00 AM before Chief Judge Larry Alan Burns. (1–2 days) (Interpreter Daniel Novoa). (Court Reporter/ECR Cynthia Ott). (Plaintiff Attorney Colin McDonald). (Defendant Attorney Benjamin Davis,FD). (no document attached) (tlw) (Entered: 09/23/2020) |
| 10/27/2020 | 51 | ORDER AUTHORIZING VIDEO TELECONFERENCE as to Juan Carlos Cabrera. Signed by Chief Judge Larry Alan Burns on 10/27/2020. (jdt) (Entered: 10/27/2020) |
| 10/28/2020 | 52 | Minute Entry for proceedings held before Chief Judge Larry Alan Burns: Status Hearing re trial setting as to Juan Carlos Cabrera held on 10/28/2020. Motion In Limine Hearing set for 12/15/2020 02:00 PM before Chief Judge Larry Alan Burns. Jury Trial set for 12/16/2020 09:00 AM before Chief Judge Larry Alan Burns. (Interpreter MariaPaz Sandoval). (Court Reporter/ECR Cynthia Ott). (Plaintiff Attorney Colin McDonald). (Defendant Attorney Benjamin Davis, FD). (no document attached) (tlw) (Entered: 10/28/2020) |
| 11/30/2020 | 53 | NOTICE OF CHANGE OF HEARING as to Defendant Juan Carlos Cabrera: On the Court's own motion, the Jury Trial is reset for 12/15/2020 09:00 AM before Chief Judge Larry Alan Burns. Motion In Limine Hearing reset for 12/14/2020 02:00 PM before Chief Judge Larry Alan Burns. (no document attached) (tlw) (Entered: 11/30/2020) |
| 12/06/2020 | 54 | TRIAL BRIEF by USA as to Juan Carlos Cabrera (McDonald, Colin) (jdt). (Entered: 12/06/2020) |
| 12/09/2020 | 55 | MINUTE ORDER by Chief Judge Larry Alan Burns on 12/9/20 as to Juan Carlos Cabrera: Court vacates jury trial set for December 15, 2020. Based upon the current status of the coronavirus pandemic and in conformity with OCJ 52 (Proceedings During the Covid–19 Public Emergency) the motions in limine and trial setting hearing is continued to January 11, 2021, at 2:00 p.m. The Court finds that the time from the date of this Order to the next hearing is tolled under the Speedy Trial Act and pursuant to 18 U.S.C. § 3174., ( Motion In Limine Hearing set for 1/11/2021 02:00 PM before Chief Judge Larry Alan Burns., Status Hearing set for 1/11/2021 02:00 PM before Chief Judge Larry Alan Burns.). Signed (no document attached) (tlw) (Entered: 12/09/2020) |
| 01/04/2021 | 56 | RESPONSE in Opposition by Juan Carlos Cabrera re 37 In Limine MOTION to Admit *Certified Documents* In Limine MOTION to Admit *Videotaped Sworn Statement*, In |

| | | Limine MOTION to Admit *A−File Documents*, In Limine MOTION to Admit Expert Testimony , In Limine MOTION to Admit Testimony *Regarding Public Records Searches*, In Limine MOTION to Admit Evidence Under Rule 609 , In Limine MOTION to Preclude Evidence *of Duress and Necessity*, In Limine MOTION to Preclude *Evidence Not Previously Produced or Noticed* (Dudani, Salil) (jdt). (Entered: 01/04/2021) |
|---|---|---|
| 01/06/2021 | 57 | MINUTE ORDER as to Juan Carlos Cabrera by Chief Judge Larry Alan Burns This case is currently scheduled for Status/Motion in Limine on January 11, 2021. Based upon the current status of the coronavirus pandemic and in conformity with OCJ 52−B (Proceedings During the Covid−19 Public Emergency) the hearing is continued to 2/8/2021 2:00 PM. The Court finds that the time from the date of this Order to the next hearing is tolled under the Speedy Trial Act and pursuant to 18 U.S.C. § 3174 (no document attached) (smr) (Entered: 01/06/2021) |
| 02/01/2021 | <u>58</u> | ORDER AND FINDINGS OF FACT (COVID−19) as to Juan Carlos Cabrera. Signed by Judge Larry Alan Burns on 2/1/2021. (jdt) (Entered: 02/02/2021) |
| 02/03/2021 | 59 | MINUTE ORDER by Judge Larry Alan Burns as to Juan Carlos Cabrera: This case is currently scheduled for trial setting on February 8, 2021. Based upon the current status of the coronavirus pandemic and in conformity with OCJ 56 (Proceedings During the Covid−19 Public Emergency) the hearing is continued to March 17, 2021, at 9:00 a.m. The Court finds that the time from the date of this Order to the next hearing is tolled under the Speedy Trial Act and pursuant to 18 U.S.C. § 3174. (no document attached) (tlw) (Entered: 02/03/2021) |
| 03/10/2021 | 60 | MINUTE ORDER by Judge Larry Alan Burns as to Juan Carlos Cabrera: This case is currently scheduled for trial setting on March 17, 2021. Based upon the current status of the coronavirus pandemic and in conformity with OCJ 63 (Proceedings During the Covid−19 Public Emergency) the hearing is continued to April 14, 2021, at 9:00 a.m. The Court finds that the time from the date of this Order to the next hearing is tolled under the Speedy Trial Act and pursuant to 18 U.S.C. § 3174 (no document attached) (tlw) (Entered: 03/10/2021) |
| 04/14/2021 | 61 | Minute Entry for proceedings held before Judge Larry Alan Burns: Defendant consents to proceed via VTC.Trial Status Hearing as to Juan Carlos Cabrera held on 4/14/2021 Motion In Limine Hearing set for 7/26/2021 02:00 PM before Judge Larry Alan Burns. Jury Trial set for 7/27/2021 02:00 PM before Judge Larry Alan Burns. (Interpreter Mylene Green). (Court Reporter/ECR Cynthia Ott). (Plaintiff Attorney Colin McDonald). (Defendant Attorney Benjamin Davis, FD). (no document attached) (tlw) (Entered: 04/15/2021) |
| 04/20/2021 | 62 | NOTICE OF CHANGE OF HEARING as to Defendant Juan Carlos Cabrera: On the Court's own motion, the Jury Trial set for 7/27/21 is vacated and reset for 5/4/2021 09:00 AM before Judge Larry Alan Burns. Motion In Limine Hearing set for 7/26/21 is vacated and reset for 5/3/2021 02:00 PM before Judge Larry Alan Burns. (no document attached) (tlw) (Entered: 04/20/2021) |
| 04/20/2021 | 63 | NOTICE OF CHANGE OF HEARING as to Defendant Juan Carlos Cabrera: Per USM, defendant unavailable due to medical reasons (quarantine) for up to 20 days. Trial Status Hearing set for 4/26/2021 02:00 PM before Judge Larry Alan Burns. Court vacates motion in limine hearing and jury trial date 5/4/21. (no document attached) (tlw) (Entered: 04/20/2021) |
| 04/26/2021 | 64 | Minute Entry for proceedings held before Judge Larry Alan Burns: Defendant not available, in hospital. Status Hearing re trial setting as to Juan Carlos Cabrera held on 4/26/2021. Excludable(s) started as to Juan Carlos Cabrera: XM − Unavailability of defendant 4/26/21−5/11/21. Motion In Limine Hearing set for 5/10/2021 02:00 PM before Judge Larry Alan Burns. Jury Trial set for 5/11/2021 09:00 AM before Judge Larry Alan Burns. (Court Reporter/ECR Cynthia Ott). (Plaintiff Attorney Adam Gordon). (Defendant Attorney Benjamin Davis, FD). (no document attached) (tlw) (Entered: 04/26/2021) |
| 04/28/2021 | 65 | NOTICE OF CHANGE OF HEARING as to Defendant Juan Carlos Cabrera: Defendant will not be available for trial, in hospital. Counsel to update the court on the defendant's readiness for trial. Jury trial set for 5/11/21 and motions in limine set for 5/10/21 is vacated. Trial Status Hearing set for 6/1/2021 02:00 PM before Judge Larry |

| | | |
|---|---|---|
| | | Alan Burns. (no document attached) (tlw) (Entered: 04/28/2021) |
| 05/25/2021 | 66 | NOTICE OF CHANGE OF HEARING as to Defendant Juan Carlos Cabrera: Per MCC, the defendant is no longer in the hospital. Court sets the jury trial for 6/8/2021 09:00 AM before Judge Larry Alan Burns. Motion In Limine Hearing set for 6/7/2021 02:00 PM before Judge Larry Alan Burns. (no document attached) (tlw) (Entered: 05/25/2021) |
| 05/30/2021 | 67 | MOTION to Suppress Statements by Juan Carlos Cabrera. (Attachments: # 1 Exhibit A, C–D)(Dudani, Salil) (ag). (Entered: 05/30/2021) |
| 06/01/2021 | 68 | NOTICE OF ATTORNEY APPEARANCE Amanda T. Muskat appearing for USA. (Muskat, Amanda)Attorney Amanda T. Muskat added to party USA(pty:pla) (jmr). (Entered: 06/01/2021) |
| 06/01/2021 | 69 | Proposed Jury Instructions by USA as to Juan Carlos Cabrera (McDonald, Colin) (jmr). (Entered: 06/01/2021) |
| 06/07/2021 | 70 | Proposed Jury Instructions by Juan Carlos Cabrera (Davis, Benjamin) (jmr). (Entered: 06/07/2021) |
| 06/07/2021 | 71 | EXHIBIT LIST by USA as to Juan Carlos Cabrera (McDonald, Colin) (jmr). (Entered: 06/07/2021) |
| 06/07/2021 | 72 | Minute Entry for proceedings held before Judge Larry Alan Burns: Motion In Limine Hearing as to Juan Carlos Cabrera held on 6/7/2021. Granting 37 In Limine MOTION to Admit *Certified Documents*; Granting In Limine MOTION to Admit *Videotaped Sworn Statement*; granting in part In Limine MOTION to Admit *A–File Documents*; granting In Limine MOTION to Admit Expert Testimony ; granting In Limine MOTION to Admit Testimony *Regarding Public Records Searches*; granting In Limine MOTION to Admit Evidence Under Rule 609 and reserve until trial as to 404B ; finding as moot In Limine MOTION to Preclude Evidence *of Duress and Necessity*; finding as moot In Limine MOTION to Preclude *Evidence Not Previously Produced or Noticed* filed by USA; Denying 67 MOTION to Suppress Statements filed by Juan Carlos Cabrera. Govt motion to exclude dft expert witness – granted. (Interpreter MariaPaz Sandoval, Paula Navarro–Gomez). (Court Reporter/ECR Cynthia Ott). (Plaintiff Attorney Amanda Muskat and Colin McDonald). (Defendant Attorney Benjamin Davis, FD and Salil Dudani). (no document attached) (tlw) (Entered: 06/08/2021) |
| 06/08/2021 | 73 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT (Jury Trial, Day 1, Cross and Redirect of Joseph Cisneros) as to Juan Carlos Cabrera held on 6/8/2021 before Judge Larry Alan Burns. Court Reporter/Transcriber: Cynthia R. Ott. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter/Transcriber. If redaction is necessary, parties have seven calendar days from the file date of the Transcript to E–File the Notice of Intent to Request Redaction. The following deadlines would also apply if requesting redaction: Redaction Request Statement due to Court Reporter/Transcriber 6/29/2021. Redacted Transcript Deadline set for 7/9/2021. Release of Transcript Restriction set for 9/7/2021. (akr) (Entered: 06/09/2021) |
| 06/08/2021 | 74 | Minute Entry for proceedings held before Judge Larry Alan Burns: Jury Trial as to Juan Carlos Cabrera held on 6/8/2021. Day of Trial 1. 12 Trial Jurors Present. 0 Alternate Jurors Present. Jury impaneled. Opening statements. Swore witnesses. Exhibits marked/received. Government rest. Defendant's rule 29 motion – denied. Defense rest. Jury instructions conference. Jury trial continued to 6/9/21 at 9:00 AM before Judge Larry Alan Burns. (Interpreter Paula Navarro–Gomez, Ana Reyna). (Court Reporter/ECR Cynthia Ott, Amanda LeGore). (Plaintiff Attorney Amanda Muskat and Colin McDonald). (Defendant Attorney Benjamin Davis, FD and Salil Dudani). (no document attached) (tlw) (Entered: 06/09/2021) |
| 06/09/2021 | 75 | Minute Entry for proceedings held before Judge Larry Alan Burns: Jury Trial as to Juan Carlos Cabrera held on 6/9/2021. Day of Trial 2. 12 Jurors Present. 0 Alternate Jurors Present. Closing arguments. Exhibits marked/received. Jury retired to deliberate at 10:45 AM. Jury returned at 3:35 PM. Verdict: guilty on counts 1 and 2. Jury polled. |

| | | Meals ordered at government expense. PSR Ordered and Sentencing w/PSR set for 9/27/21 at 9 AM before Judge Larry Alan Burns. Government's request to vacate 7/27/21 revocation of supervised release hearing and continue to 9/27/21 at 9 AM in related case 15CR353–LAB –Granted. (Interpreter Ana Reyna, Paula Navarro–Gomez). (Court Reporter/ECR Cynthia Ott). (Plaintiff Attorney Amanda Muskat and Colin McDonald). (Defendant Attorney Benjamin Davis, FD and Salil Dudani). (no document attached) (tlw) (Entered: 06/09/2021) |
|---|---|---|
| 06/09/2021 | 76 | JURY VERDICT as to Juan Carlos Cabrera (1) Guilty on Count 1,2. (tlw) (Entered: 06/09/2021) |
| 06/09/2021 | 77 | COURT'S Jury Instructions as to Defendant Juan Carlos Cabrera (tlw) (Entered: 06/09/2021) |
| 06/09/2021 | 78 | COURT EXHIBIT LIST (tlw) (Entered: 06/09/2021) |
| 06/09/2021 | 79 | Defendant EXHIBIT LIST as to defendant Juan Carlos Cabrera (tlw) (Entered: 06/09/2021) |
| 06/09/2021 | 80 | Plaintiff EXHIBIT LIST by USA as to Juan Carlos Cabrera (tlw) (Entered: 06/09/2021) |
| 06/09/2021 | 81 | JURY TRIAL WITNESS LIST as to defendant Juan Carlos Cabrera (tlw) (Entered: 06/09/2021) |
| 06/10/2021 | 82 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT (Excerpt of the Testimony of Witness Cisneros) as to Juan Carlos Cabrera held on 6/8/2021 before Judge Larry Alan Burns. Court Reporter/Transcriber: Amanda M. LeGore. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter/Transcriber. If redaction is necessary, parties have seven calendar days from the file date of the Transcript to E–File the Notice of Intent to Request Redaction. The following deadlines would also apply if requesting redaction: Redaction Request Statement due to Court Reporter/Transcriber 7/1/2021. Redacted Transcript Deadline set for 7/12/2021. Release of Transcript Restriction set for 9/8/2021. (akr) (Entered: 06/10/2021) |
| 08/23/2021 | 83 | PRE–SENTENCE REPORT as to Juan Carlos Cabrera. Report prepared by: Christina E. Jones. (Document applicable to USA, Juan Carlos Cabrera.) (Iribe, K.) (Entered: 08/23/2021) |
| 09/20/2021 | 84 | SENTENCING SUMMARY CHART by USA as to Juan Carlos Cabrera (Muskat, Amanda) (dxf). (Entered: 09/20/2021) |
| 09/21/2021 | 85 | NOTICE OF CHANGE OF HEARING as to Defendant Juan Carlos Cabrera: On the Court's own motion, the Sentence With PSR is reset for 9/28/2021 09:00 AM before Judge Larry Alan Burns. (no document attached) (tlw) (Entered: 09/21/2021) |
| 09/22/2021 | 86 | NOTICE OF CHANGE OF HEARING as to Defendant Juan Carlos Cabrera: Upon the request of Benjamin Davis, FD, with no objection by government counsel, the Sentence With PSR set for 9/28/21 is vacated and continued to 11/15/2021 03:00 PM before Judge Larry Alan Burns. (no document attached) (tlw) (Entered: 09/22/2021) |
| 11/09/2021 | 87 | SENTENCING MEMORANDUM by Juan Carlos Cabrera (Davis, Benjamin) (dxf). (Entered: 11/09/2021) |
| 11/10/2021 | 88 | Supplemental Sentencing Document: Response in Opposition to Defendant's Objections to the Presentence Report by USA as to Juan Carlos Cabrera, re 87 Sentencing Memorandum (McDonald, Colin) (dxf). (Entered: 11/10/2021) |
| 11/15/2021 | 89 | Minute Entry for proceedings held before Judge Larry Alan Burns: Sentence With PSR Hearing held on 11/15/2021 for Juan Carlos Cabrera (1). Count(s) 1, Bureau of Prisons for 24 months to run concurrent to count 2, no supervised release, no fine, assessment $100.00 – waived; Count(s) 2, Bureau of Prisons for 51 months to run concurrent to count 1, supervised release 3 years, no fine, assessment $100.00 – waived. (Interpreter Edith Monroy). (Court Reporter/ECR Cynthia Ott). (Plaintiff Attorney Colin McDonald, AUSA). (Defendant Attorney Benjamin Davis, FD). (Ryan Alejandria, USPO). (no document attached) (tlw) (Entered: 11/16/2021) |

ER-480

| 11/16/2021 | 90 | NOTICE OF APPEAL by Juan Carlos Cabrera. Fee Waived. (Notice of Appeal electronically transmitted to the US Court of Appeals.) (Davis, Benjamin) (akr) (Entered: 11/16/2021) |
|---|---|---|
| 11/16/2021 | 91 | USCA Case Number 21–50259 for 90 Notice of Appeal filed by Juan Carlos Cabrera. (akr) (Entered: 11/16/2021) |
| 11/16/2021 | 92 | USCA Time Schedule Order for 90 Notice of Appeal filed by Juan Carlos Cabrera. (NOTICE TO PARTIES of deadlines regarding appellate transcripts: Appellant shall file transcript designation and ordering form with the US District Court, provide a copy of the form to the court reporter, and make payment arrangements with the court reporter on or by 12/7/2021 (see Ninth Circuit Rule 10–3.2); Due date for filing of transcripts in US District Court is 1/6/2022.) (akr) (Entered: 11/16/2021) |

ER-481